Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc.

ANTHONY'S PIER FOUR, INC. vs. CRANDALL DRY DOCK
ENGINEERS, INC. & another.[1]

Suffolk.    November 7, 1985. — February 26, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Practice, Civil,* Summary judgment. *Limitations, Statute of. Repose, Statute of. Warranty.*

General Laws c. 260, § 2B, which places a time limit on the tort liability
    of architects, engineers, and building contractors, is not applicable to
    contract actions for breach of an express warranty. [822-823]
A cause of action against the designer of a foundation and mooring system
    for a boat, for breach of an express warranty that the mooring system
    would be sufficient and adequate to keep the boat permanently moored
    under expected wind and tidal conditions did not accrue until the plaintiff
    discovered the breach when the boat capsized during a storm. [824-826]
In an action for breach of an express warranty that a mooring system for
    a boat would be sufficient and adequate to keep the boat permanently
    moored under expected wind and tidal conditions, the record on the
    defendants' motion for summary judgment presented a dispute as to
    whether one of the defendants had made any express warranties, but
    did not present any evidence that the second defendant had done so.
    [826-829]

CIVIL ACTION commenced in the Superior Court Department
on January 30, 1980.

Motions for summary judgment were heard by *Jeremiah J.
Sullivan,* J., sitting under statutory authority.

The Supreme Judicial Court granted a request for direct
appellate review.

*Jean M. Kelley* for the plaintiff.
*Phyllis Fine Menken* (*John M. Reed* with her) for Haley &
Aldrich, Inc.
*Robert S. Potters* for Crandall Dry Dock Engineers, Inc.

[1] Haley & Aldrich, Inc.

396 Mass. 818                                                    819

Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc.

ABRAMS, J. On February 6 and 7, 1978, the "Great Blizzard of 1978" swept through Boston.[2] High winds and flood tides in Boston Harbor caused the S.S. Peter Stuyvesant to rise off an underwater cradle, break loose from its mooring, and capsize, resulting in a total loss of the ship. In this case, we consider whether the owner of the ship, Anthony's Pier Four, Inc., may maintain its action against the designers of the mooring system for breach of express warranty.

The plaintiff commenced this action in 1980, naming as defendants the Perini Corporation (Perini), Haley & Aldrich, Inc. (Haley & Aldrich), and Crandall Dry Dock Engineers, Inc. (Crandall Dry Dock). On December 30, 1983, the plaintiff filed an amended complaint with leave of court, adding Bond Brothers, Inc. (Bond), as a party defendant and adding factual allegations against all defendants. The amended complaint alleges negligent design and construction, breach of implied warranties, and breach of express warranties. All four defendants moved for summary judgment, and their motions were allowed. The plaintiff appealed from the judgments entered for Haley & Aldrich and Crandall Dry Dock. We granted the plaintiff's application for direct appellate review. We affirm the judgment for Haley & Aldrich. Because there is a genuine issue of material fact on the claim against Crandall Dry Dock for breach of an express warranty, we reverse in part the judgment for that defendant.

1. *The complaint.* We summarize the allegations and factual circumstances giving rise to the complaint. The plaintiff is the owner of Anthony's Pier Four, a restaurant located in Boston. In 1968, the plaintiff purchased the S.S. Peter Stuyvesant, a former Hudson River cruise ship, for the purpose of converting it to a cocktail lounge and function area for the restaurant. The president of the plaintiff corporation, Anthony Athanas, intended permanently to moor the ship in the tide waters of Boston Harbor, alongside the pier immediately adjacent to the

---

[2] We take judicial notice of the storm. See *Lajoie* v. *Milliken,* 242 Mass. 508, 520 (1922); *Anselmo* v. *James,* 449 F. Supp. 922, 924 (D. Mass. 1978). See also P.J. Liacos, Massachusetts Evidence 29 (5th ed. 1981).

restaurant. Athanas consulted with James Haley of Haley & Aldrich, who in turn consulted with Paul Crandall of Crandall Dry Dock, to determine how best to achieve this installation.[3]

Crandall Dry Dock agreed to design a foundation and mooring system for the ship. The concept of the design was that a foundation, consisting of wood piles sunk into the ocean floor, would support a timber cradle, and the cradle, in turn, would support the ship. Concrete ballast was to hold the ship down in the cradle against normal tidal forces, except that once or twice a year the boat would float during the high equinoctial tides. Two stanchions (vertical pipes) were connected by mooring attachments to the boat so that when it floated during severe tides, the mooring attachments would secure the boat and then guide it properly back into place on the cradle as the tide receded. Once the design was presented and approved, the plaintiff entered into written contracts with Perini and Crandall Dry Dock for the construction of the foundation and mooring system. The work was completed and the ship was floated into place in October, 1968. The defendants ended their involvement with the project shortly thereafter. Over nine years later, during the Great Blizzard of 1978, extraordinarily high tides caused the Stuyvesant to float off its cradle. The mooring apparatus allegedly failed, and the ship capsized and sank.

In count I of the amended complaint, the plaintiff alleges that the defendants were negligent in the design and construction of the cradle and mooring system. In count II, the plaintiff alleges breach of implied warranties. In count III, the plaintiff alleges that both defendants broke express warranties that the mooring system would be sufficient to withstand wind and tidal forces and that Crandall Dry Dock failed to comply with

---

[3] The plaintiff's agreement with Haley & Aldrich was oral. Whether Crandall Dry Dock's design agreement was with the plaintiff or only with Haley & Aldrich, or with both, is unclear. The record indicates that Crandall Dry Dock billed Haley & Aldrich for "[d]esign of submerged ship support." The Crandall Dry Dock invoices refer to Haley & Aldrich's order number as "Oral 1/15/68." Haley & Aldrich in turn billed the plaintiff for expenses incurred in obtaining Crandall Dry Dock's design services.

its obligation under the written construction contract to provide workmen and subcontractors skilled in their trades.[4]

The defendants moved for summary judgment on the ground that the plaintiff's claim was time-barred by G. L. c. 260, § 2B,[5] a statute of repose, as well as a statute of limitations, which limits the time period within which tort claims may be brought against design professionals. See *Tindol* v. *Boston Hous. Auth., ante* 515, 517 & n.4 (1986); *Klein* v. *Catalano,* 386 Mass. 701 (1982). These motions were allowed. On appeal, the plaintiff argues that G. L. c. 260, § 2B, does not apply because its claim for breach of express warranty is a contract action, rather than a tort action.[6] The plaintiff further argues that the applicable statute of limitations is G. L. c. 260, § 2,[7] which allows contract actions to be commenced within

---

[4] On appeal, the plaintiff focuses on its express warranty claim and does not argue that summary judgment on the first two counts was improper. Questions not argued on appeal are deemed waived. Mass R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). See *Corsetti* v. *Stone Co., ante* 1, 27 (1985).

[5] General Laws c. 260, § 2B (1984 ed.), effective until April 7, 1985, provides: "Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the performance or furnishing of such design, planning, construction or general administration." This section was amended by St. 1984, c. 484, § 53, effective April 7, 1985. The amendment does not affect the issues here under consideration.

[6] The plaintiff also argues for the first time on appeal that G. L. c. 260, § 2B, does not apply to contract actions between parties in privity and that it is therefore inapplicable to the plaintiff's claims against these defendants. Because this privity argument was not pleaded or argued below, the issue is not before the court. *Penney* v. *First Nat'l Bank,* 385 Mass. 715, 719 n.2 (1982).

[7] General Laws c. 260, § 2 (1984 ed.), provides: "Actions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied, except actions limited by section one or actions upon judgments or decrees of courts of record of the United States or of this or of any other state of the United States, shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."

six years from the date on which the cause of action accrues. The plaintiff contends that its cause of action accrued on February 7, 1978, when it first discovered the defendants' breach. Finally, the plaintiff argues that there exist genuine issues of material fact which make summary judgment inappropriate.

2. *Standard for summary judgment.* A judge presented with a motion for summary judgment must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in determining whether summary judgment is appropriate. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The burden on the moving party is to "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* The evidence is "considered with an indulgence in the [opposing party's] favor." *National Ass'n of Gov't Employees* v. *Central Broadcasting Corp.,* 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). We have reviewed the standards for summary judgment and the burden on the moving and opposing parties in two recent cases, *Godbout* v. *Cousens, ante* 254 (1985), and *Madsen* v. *Erwin,* 395 Mass. 715 (1985).

3. *Applicability of G. L. c. 260, § 2B.* The defendants first argue that the plaintiff's claim is barred by the six-year statute of repose, G. L. c. 260, § 2B. We disagree.

The plaintiff's claim is for breach of express warranty. The theory of such a claim is that the defendants are liable to the plaintiff for failure to provide a design that meets a standard of performance allegedly promised by the defendants. Because the standard of performance is set by the defendants' promises, rather than imposed by law, an express warranty claim is and generally has been understood to be an action of contract, rather than of tort. See W. Prosser & W. Keeton, Torts § 92, at 656, 657 (5th ed. 1984). On its face, § 2B applies only to "[a]ctions of tort." Thus, we reaffirm our holding that "G. L. c. 260, § 2B, does not apply to contract actions" *Klein* v. *Catalano,* 386 Mass. 701, 708 (1982). If a design professional expressly warrants a certain result, "the plaintiff may maintain an action for breach of express warranty." *Id.* at 720.

396 Mass. 818                                                      823

Anthony's Pier Four, Inc. *v.* Crandall Dry Dock Engineers, Inc.

A plaintiff may not, of course, escape the consequences of a statute of repose or statute of limitations on tort actions merely by labelling the claim as contractual. The court must look to the "gist of the action." *Hendrickson* v. *Sears,* 365 Mass. 83, 85 (1974). Thus, in *Klein, supra,* we held that § 2B would bar a breach of implied warranty claim where the elements for breach of implied warranty and for negligence claims are the same. *Id.* at 719 & n.19. A claim for breach of express warranty differs, however, from a negligence claim because the plaintiff must demonstrate that the defendant promised a specific result. See *Clevenger* v. *Haling,* 379 Mass. 154, 157-159 (1979); *Sullivan* v. *O'Connor,* 363 Mass. 579, 581-582 (1973). Cf. G. L. c. 106, § 2-313 (1984 ed.). Here the plaintiff alleges that the defendants promised that the mooring system would be sufficient and adequate to keep the Stuyvesant permanently moored under expected wind and tidal conditions. This promise, if given, imposes higher duty on the defendants than the implied promise that in designing the mooring system they would "exercise that standard of reasonable care required of members of [their] profession." *Klein, supra* at 719. We therefore conclude that § 2B does not apply to the plaintiff's express warranty claims.[8]

---

[8] The plaintiff also argues that G. L. c. 260, § 2B, does not apply because the mooring system for the ship was not "an improvement to real property" within the meaning of the statute. See *Milligan* v. *Tibbetts Eng'g Corp.,* 391 Mass. 364, 368 (1984). We disagree. The ship was a permanent addition to the restaurant. It was filled with concrete ballast so that it would not readily float and thus would not be severable from its resting point. The ship was given a street address. The cradle and mooring system were designed and constructed in accordance with the Boston Building Code and records were maintained and filed as required by the Code. The public had access to the ship on the same basis as their access to the restaurant. Regardless of whether the ship itself could be considered an improvement to real property (a question we need not reach), the mooring system made possible the placement of the ship immediately adjacent to the restaurant so that it could be used as a cocktail lounge, thereby enhancing the capital value of the restaurant. Indeed, a single liquor license covered both the restaurant and the ship. Finally, the nature of the engineering and design work for this particular mooring system is within the range of engineering and design activities which the Legislature intended to protect when it enacted § 2B. *Milligan, supra.* We therefore conclude that, on the particular facts of this case, the mooring system is "an improvement to real property" within the meaning of § 2B.

4. *Discovery rule in contract actions.* The defendants contend that, even if § 2B does not apply, then the claims would nonetheless be barred by the six-year statute of limitations for contract actions under G. L. c. 260, § 2. We first consider the applicability of § 2 to the plaintiff's claims that Haley & Aldrich and Crandall Dry Dock expressly warranted that the design of the mooring system would be sufficient. The plaintiff argues that its cause of action did not accrue until 1978, when, by reason of the failure of the system, it first discovered the defendants' breach. The defendants respond that in a contract action the statute of limitations begins to run on the date of the breach, not on the date of discovery. See *Wolverine Ins. Co.* v. *Tower Iron Works, Inc.,* 370 F.2d 700, 702 (1st Cir. 1966). If there was a breach, the defendants argue, it occurred in 1968 and the plaintiff's action is now time-barred.

"The determination of when a cause of action 'accrues' has generally been left to the courts by the Legislature. . . . In making this determination, this court has been guided by the basic principle that '"a cause of action accrues on the happening of an event likely to put the plaintiff on notice." *Hendrickson* v. *Sears,* 365 Mass. 83, 89-90 (1974), and cases cited.' *Franklin* v. *Albert,* [381 Mass. 611, 618 (1980)]." *White* v. *Peabody Constr. Co.,* 386 Mass. 121, 128-129 (1982). We have applied this "discovery rule" in a variety of cases. See *Franklin* v. *Albert, supra,* and cases cited. The principle underlying the discovery rule is that "a plaintiff should be put on notice before his claim is barred." *Id.* at 619. The defendants offer no reason — and we discern none — why that principle is inapplicable to this case.

Apart from the special protection against tort actions provided in G. L. c. 260, § 2B, see *Tindol* v. *Boston Hous. Auth., ante* 515, 518 (1986), the Legislature has not differentiated design professionals from other professionals subject to malpractice and breach of contract claims, nor have our decisions done so. Accordingly, cases involving contractual claims against other professionals furnish guidance here. In *Hendrickson* v. *Sears, supra,* the plaintiffs brought an action against their former attorney for negligent certification of title to real

estate. We did not reach the question whether the plaintiffs' cause of action was a contract action covered by c. 260, § 2, or a tort action covered by the two-year period of G. L. c. 260, § 2A, as then in effect. We held that, in either case, "[a] client's cause of action against an attorney for negligent certification of title to real estate does not 'accrue' for the purposes of G. L. c. 260, §§ 2 and 2A, until the misrepresentation is discovered or should reasonably have been discovered, whichever first occurs." *Sears, supra* at 91. See also *Franklin* v. *Albert, supra* (applying discovery rule to G. L. c. 260, § 4, as amended through St. 1973, c. 777, § 3, governing "[a]ctions of contract or tort" against medical and various other professionals). In reaching the result in *Sears, supra,* we stated, "The attorney, like the doctor, is an expert, and much of his work is done out of the client's view. The client is not an expert; he cannot be expected to recognize professional negligence if he sees it, and he should not be expected to watch over the professional or to retain a second professional to do so." *Id.* at 90.

Virtually the same could be said of the relationship between the client and the design professionals involved in this case. The plaintiff operated a restaurant and relied upon the defendants to design a cradle and mooring system that would meet its requirements. Much of the design work involved matters beyond its ken, such as analysis of the conditions on the ocean floor, prediction of likely wind and tidal forces and calculation of their effects on the ship under different ballasting conditions. The plaintiff could not be expected to recognize that the design would fail to meet the promised performance standards without hiring other professionals to review the defendants' work. We therefore believe that the discovery rule should be applied to this claim.[9] The plaintiff's claims for breach of express warranty

[9] In its amended complaint, the plaintiff also alleges that Crandall Dry Dock violated article 3 of its written construction contract, which requires that "[a]ll workmen and sub-contractors shall be skilled in their trades." On its face, this provision applies only to the qualifications of workmen and subcontractors, not to the quality of their finished work on this particular

did not accrue for purposes of G. L. c. 260, § 2, until the plaintiff knew or reasonably should have known of the breach. The plaintiff discovered the breach when the boat capsized in 1978 and there is no showing that it should have known of the breach earlier. The filing of the claim therefore was timely under the six-year limit of G. L. c. 260, § 2.

5. *Issues of material fact.* We now consider whether each defendant established that there exist no genuine issues of material fact and that it is entitled to judgment as a matter of law. In its complaint, the plaintiff alleges that Crandall Dry Dock expressly warranted that the cradle and mooring system was "reasonably fit for the purpose of keeping the S.S. Peter Stuyvesant stable, intact, and permanently attached to the solid filled pier." With its motion for summary judgment, Crandall Dry Dock submitted the affidavit of Paul Crandall, its president and chief engineer, in which he denied making any express warranties. Crandall Dry Dock also referred to the deposition testimony of Anthony Athanas and argued that nowhere in that testimony does Athanas either state that Crandall expressly warranted a particular result or recall words to that effect. In opposition to the motion, the plaintiff submitted an affidavit from Athanas, in which he stated: "6. . . . I was informed by Mr. Crandall and Mr. Haley that the design and construction of the mooring system was adequate and sufficient for the purpose for which it was intended. 7. During the installation of the mooring system, I had a conversation with Mr. Crandall and Mr. Haley and Thomas Coughlin (a consultant hired by the plaintiff). I stated that I thought additional protection was needed to hold the boat in place. Specifically, I suggested that two additional cluster piles be driven into the ocean bottom

job. This promise, if broken at all, was broken at the time of construction. Whether the workmen and subcontractors were skilled in their trade is a fact that the plaintiff could have ascertained at the time of construction in 1968 by inquiring as to their qualifications. There is nothing inherently unknowable about this claim. *White* v. *Peabody Constr. Co.,* 386 Mass. 121, 130 (1982). Moreover, there is no evidence in the record of any disputed facts concerning the skill of the workmen and subcontractors. This portion of the plaintiff's claim against Crandall Dry Dock accrued in 1968 and is therefore barred by the six-year statute of limitations, G. L. c. 260, § 2.

396 Mass. 818                    827

Anthony's Pier Four, Inc. *v.* Crandall Dry Dock Engineers, Inc.

on the starboard side of the ship. Mr. Crandall rejected the idea, stating very plainly that the plans as they existed without the additional outside pilings were sufficient to protect the ship. . . . Mr. Crandall repeated that the additional pilings were not necessary." The plaintiff also submitted an affidavit from Coughlin that corroborates Athanas' version of events. In turn, Crandall Dry Dock urges us to ignore the Athanas and Coughlin affidavits in so far as they contradict their prior deposition testimony.

Our rule states that the court must consider the depositions "together with the affidavits." Mass. R. Civ. P. 56 (c). We have previously recognized that "there may be instances in which an affidavit denying deposition testimony may not fairly raise a genuine issue of material fact." *Guenard* v. *Burke,* 387 Mass. 802, 812-813 (1982), citing *Perma Research & Dev. Co.* v. *Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969). This case does not present such an instance. The affidavits do not contradict Athanas' and Coughlin's prior testimony. Viewed in a light most favorable to the plaintiff, the affidavits merely summarize the most relevant portions of several hundred pages of deposition testimony. At worst, the affidavits relate the affiants' recollection of conversations that had occurred fifteen to seventeen years before with somewhat greater clarity than they were able to muster at the depositions. Even if the statements had been conflicting, it would have been for the fact finder to determine which version to believe, absent an affirmative election between the versions by each witness. See *Yanowitz* v. *Augenstern,* 343 Mass. 513, 514-515 (1962); P.J. Liacos, Massachusetts Evidence 143 (5th ed 1981).

Turning to the record before the judge, we believe that Athanas' assertion in his affidavit that he was "informed" by Crandall that the design would be "adequate and sufficient for the purposes for which it was intended" and similar statements in his and Coughlin's depositions are plainly insufficient to establish an express warranty. In the absence of any more specific language, or indication of the circumstances in which Athanas was so "informed," Crandall's statements appear to be no more than opinions that lack a promissory nature. See *Clevenger* v. *Haling,* 379 Mass. 154, 159 (1979).

However, we believe that there is sufficient specificity in the evidence concerning the proposal to sink additional cluster piles to secure the ship. Viewed most favorably to the plaintiff, that evidence indicates that Athanas expressed specific concerns about the adequacy of the design and suggested a modification. In rejecting the suggestion, Crandall Dry Dock assured the plaintiff that its work would be fit for the intended purpose of permanently mooring the ship. Such an assurance would impose a higher standard of performance on Crandall Dry Dock than its implied warranty of reasonable care. See *Klein* v. *Catalano,* 386 Mass. 701, 719 (1982). Therefore, there is evidence from which a fact finder could conclude that Crandall Dry Dock made assurances amounting to an express warranty. Of course, Crandall Dry Dock, by the affidavit of Crandall, denies making any express warranties. There is, therefore, a genuine dispute as to whether any express warranties were made by Crandall Dry Dock.[10] Thus, summary judgment is inappropriate.

The plaintiff also argues that Haley & Aldrich gave express warranties by Haley's statements, prior to the plaintiff's purchase of the ship, that it was possible to secure the ship in a manner that would fulfil the plaintiff's requirements. A statement of opinion by a design professional that it is possible to meet certain requirements falls far short of a promise that a particular finished design will perform according to the requirements. Next, the plaintiff argues that an express warranty was created when Haley remained silent at the time Crandall rejected Athanas' suggestion of additional cluster piles. Apart from the doubtful validity of the proposition that an express warranty can ever by created by silence, there is no evidence in the record that Haley & Aldrich bore any responsibility for the design of the mooring system. Crandall Dry Dock admitted that it had designed the mooring system, and the plaintiff submitted copies of its invoices from Haley & Aldrich that

---

[10] Because we must remand the case to the Superior Court on the issue, we need not decide whether technical specifications allegedly incorporated in the June, 1968, written contract between the plaintiff and Crandall Dry Dock create express warranties.

clearly show Crandall Dry Dock's design fees as a separate expense item. There is no evidence that, with respect to the mooring system, Haley & Aldrich contracted for any duty more onerous than its implied duty of reasonable care in selecting an independent contractor with sufficient expertise to design the system. On the record before us there is no evidence that Haley & Aldrich gave express warranties on the mooring system. Summary judgment appropriately was entered for Haley & Aldrich.

6. *Summary.* The plaintiff's claims for breach of express warranty are subject to the six-year statute of limitations for contract actions, and they accrued when the plaintiff knew or reasonably should have known of the breach. Summary judgment properly was granted for Haley & Aldrich on all counts and for Crandall Dry Dock on all counts except the one alleging breach of express warranties in the design of the mooring system. The judgment for Haley & Aldrich is affirmed; the judgment for Crandall Dry Dock is affirmed in part and reversed in part. The case against Crandall Dry Dock is remanded for further proceedings consistent with this opinion.

*So ordered.*