Burnes, J.
Plaintiff, David McMillan (“Mr. McMillan”), brought this action individually and as executor of the estate of his wife, Liselotte McMillan (“Mrs. McMillan”), to recover damages arising out of the alleged negligence and breach of warranty of defendants, Sears, Roebuck and Co. (“Sears”), and Robert Reposa d/b/a B&B Remodeling, Inc. (“B&B”). Mr. McMillan alleges, inter alia, that the house fire which resulted in the death of Ms. McMillan was caused by the negligent installation of electrical wiring and a light fixture during a bathroom renovation and remodeling project. Defendants now move for summary judgment pursuant to Mass.R.Civ.P. 56 on the ground that the statute of repose bars plaintiffs action. For the reasons discussed below, defendants’ motion for summary judgment is ALLOWED.
BACKGROUND
The undisputed material facts as established by the summary judgment record are as follows: On October 30, 1989, Mrs. McMillan signed a contract with Sears for the remodeling of her first-floor bathroom located at 15 Maple Street, Ayer, Massachusetts. In accordance with the contract, Sears agreed to supply and arrange for the installation of various materials and fixtures, including a new shower base, door, and wall, a vanity, a cabinet over the toilet, a faucet, a pressure balance shower valve and Formica paneling to cover the walls. Specifically, the contract stated, in pertinent part: “Sears offers to furnish the materials and arrange for their delivery and installation as specified ... on attached sketches and specification sheets.” Additionally, the contract included an Authorization Clause which stated:
I authorize Sears: 1) to arrange for a contractor (licensed where required by law) to make the installation of materials, 2) to issue a work order for this installation to a contractor, 3) to inspect the installation, and 4) to pay the contractor when the instal *157 lation is complete if I have signed a certificate that the installation has been completed to my satisfaction.
The estimated start date for the project was the week of November 27, 1989. The remodeling work was designed and diagramed by a Sears employee, Sheila Ogle (“Ms. Ogle”).
Thereafter, Sears hired B&B to perform the remodeling job according to the bathroom schematic Ms. Ogle had designed and drawn. B&B is an independent contractor owned and operated by Robert Reposa (“Mr. Reposa”).
In late November 1989, B&B began remodeling the McMillans’ bathroom. Several days after the remodeling project began, B&B discovered that the vanity which was to be installed required electrical work to be done. The original contract and work order drawn up by Sears did not provide for such work. B&B, therefore, contacted Sears in order to change the original work order. Ms. Ogle went to the McMillan residence and prepared a change order that Mr. Reposa and Mrs. McMillan each signed on November 30, 1989. Specifically, the electrical work in the change order included the wiring of the vanity light and the installation of a grounding outlet.
On December 13, 1989, B&B completed the remodeling work on the bathroom. On this same day, Mrs. McMillan signed the certificate of completion and waiver of hen. On December 14, 1989, Mr. Reposa received his final payment from Sears for the McMillan remodeling project.
On December 29, 1989, a representative of Sears inspected the completed work of B&B and prepared a punch list of minor items that needed to be completed. Sears notified B&B of the minor repairs, and Mr. Reposa returned to the McMillans’ home to make these repairs shortly thereafter. On January 9, 1990, Mrs. McMillan signed and dated the December 29, 1989 punch list as completed. In addition to the three items Usted on the original punch list, Mrs. McMillan reported that a shower leak had been discovered by her husband, in late December or early January, when he was showering in the newly remodeled shower and she requested that it be repaired.
On January 16, 1990, Sears issued a second work order instructing B&B to return to the McMillans’ home once again and fix the reported shower leak. There were no further complaints to Sears lodged by the McMillans regarding the remodeled bathroom.
On June 13, 1993, a fire occurred at the McMillans’ home in Ayer, Massachusetts, resulting in the death of Mrs. McMillan. After an investigation, it was determined that the fire originated in the ceiling area of the first-floor bathroom. Mr. McMillan instituted this action by filing an original complaint with the court on March 26, 1996. On April 3, 1996, Mr. McMillan filed an amended complaint adding Mr. Reposa and B&B as direct defendants.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of triable issues, and that the summary judgment record entitles the moving party to judgment as a matter of law. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the nonmoving party’s case, or by demonstrating that the nonmoving party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. Motors Corp., 410 Mass. 706, 716 (1991); see also Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion may respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17.
In this case, the defendants contend that Mr. McMillan’s suit is barred by the statute of repose, G.L.c. 260, §2B. General Laws c. 260, §2B limits the time period within which tort claims may be brought against professionals involved in improvements to real estate. See Klein v. Catalano, 386 Mass. 701, 710 (1982). In pertinent part, the statute provides that:
Action[s] of tort for damages arising out of any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property, other than that of a public agency . . . shall be commenced only within three years next after the cause of action accrues, provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner . . .
The defendants assert that Mr. McMillan commenced this action more than six years after the McMillans’ bathroom was substantially completed and was open for use and, therefore, is barred by the statute. This court agrees. “Whether a defendant’s activities fall within the statute is a question of law.” Snow v. Harnischfeger Corp., 12 F.3d 1154, 1160 (1st Cir. 1993).
I. Protected Actors Under the Statute of Repose
It is uncontested that the remodeling work performed on Mr. McMillan’s bathroom was an “improve *158 ment to real property” pursuant to the statute’s definition. Mr. McMillan, however, contends that the statute of repose only protects those professionals engaged in the design and construction of real property, such as architects, engineers and contractors. Mr. McMillan further argues that the statute does not protect unlicensed and unqualified entities as he alleges Sears and B&B are. Finally, Mr. McMillan claims that Sears is a supplier who merely offered to furnish and arrange for the delivery and installation of certain fixtures and, therefore, is not a protected actor under the statute.
The purpose of the statute is to protect acts of “individual expertise” akin to those commonly thought to be performed by architects and contractors — that is to say, to parties who render particularized services for the design and construction of particular improvements to particular pieces of real property. McDonough v. Marr Scaffolding Co., 412 Mass. 636, 641-42 (1992), citing Dighton v. Federal Pac. Elec. Co., 399 Mass. 687, 696 (1987). The statute defines a protected actor “largely by reference to protected acts,” Dighton, 399 Mass. at 694, and extends protection to persons allegedly responsible for those acts. Id. For instance, “an actor may perform multiple roles in the market place and nonetheless retain the protection of the statute if its primary role was a protected actor.” McDonough, supra, at 641-42 (an actor such as a manufacturer or supplier may be protected if that actor becomes more than a mere supplier by engaging in protected activities).
Here, Sears does not dispute that it was the supplier of fixtures and materials for the bathroom. Sears argues, however, that its involvement in the remodeling project went beyond that of a mere supplier. Sears was involved in detañed design discussions with Mrs. McMillan. In particular, to satisfy the McMülans’ specific needs, Ms. Ogle, a certified kitchen designer, used her individual expertise to design the remodeling job and draw up two different designs.[3] Ms. Ogle assisted Mrs. McMülan in the selection of the fixtures, tiles and other supplies and materials for her particular remodeling job. Ms. Ogle also revised the original work order in order to accommodate the need for the performance of additional services on the remodeling project. Most importantly, it is these very designs and supervisory acts out of which this claim arises. See Plaintiffs Supplemental Answers to Interrogatories. There is not a claim that any product was defective.
In McDonough, the Supreme Judicial Court found that “in addition to whatever acts [the defendant] carried out as a supplier of the bleachers to the rink, it performed particularized construction services in assembling and installing the bleachers.” McDonough, supra, at 642. Similar to the involvement of the defendant in McDonough, Sears performed particularized services, necessary for protection under the statute, when it designed, planned and diagramed a bathroom for the McMülans. Sears also took part in the administration and inspection of the project by having B&B perform the work and by assigning someone to ensure that the project was satisfactorily completed. Thus, as a matter of law, Sears’s function as planner and designer of the remodeling project places Sears weü within the class of protected actors contemplated by the statute of repose. Compare Dighton, 399 Mass. at 696 (supplier of an allegedly defective circuit breaker panel feU outside the class of actors intended to be protected because he did not claim to have rendered any particularized services with respect to design or construction of the building in which the component it supplied had been instaUed).
Similarly, Mr. Reposa and his company are protected by the statute of repose since B&B performed the construction on the remodeling job, including the tiling, paneling, and installation of the cabinets and shower stall. These acts certainly fall within the statutory reference to “design, planning, construction, or general administration of an improvement to real property.” G.L.c. 260, §2B. Since B&B provided particularized construction services to the McMillans, B&B and Mr. Reposa, as a matter of law, are protected under the statute of repose.
II. Commencement of the Action
Mr. McMillan next argues that a question of fact exists as to the question of when the bathroom was “substantially completed" or “open to use” under the statute. This determination is essential in order to ascertain when the cause of action accrued under G.L.c. 260, §2B. As support for this assertion, Mr. McMülan relies on the deposition testimony of his son, Frederick McMillan, who testified that “it is his belief that the project was not completed until sometime in 1991.” See Deposition of Frank McMillan, July 30, 1997.
The undisputed evidence before this court shows that Mrs. McMillan reviewed the completed remodeling work on December 13, 1989 and signed the waiver of lien and certificate of completion. The McMülans made use of the bathroom shower shortly thereafter. Additionally, B&B reported that it was paid in fuü for its work by the end of December 1989 pursuant to the contract which authorized Sears to “pay the contractor when the installation is complete, if [the McMillans] have signed a certificate that the installation has been completed to [the McMillans’] satisfaction.”
The unsubstantiated recollection of Frederick Mc-Mülan that the project was not completed untü 1991 is irrelevant. The documented evidence in the record indicates that the work was substantially completed in December of 1989. There is no dispute that it was open for use at that time. Under the statute, the defendants need show only that either one of those conditions is met. They have made that showing. Mr. McMiUan’s tort claims are barred by c. 260, §2B.
*159 III. Scope of Statute of Repose
Mr. McMillan argues that even if the statute of repose applies in this case, only the negligence claims are barred. Conversely, the defendants contend that Mr. McMillan’s claims for breach of implied and express warranty and violation of G.L.c. 93A are barred by the statute of repose, since all of the causes of action address the same alleged conduct. Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818, 822 (1986). The statute of repose bars all actions in tort connected to the protected activity. G.L.c. 260, §2B, McDonough, 412 Mass. at 636. “[A] plaintiff may not, of course, escape the consequences of a statute of repose or statute of limitations on tort actions merely by labeling the claim as contractual. The court must look to the gist of the action.” Anthony’s Pier Four, 396 Mass. at 823.
Here, Mr. McMillan’s claims for breach of an implied warranty and violation of c. 93A arise from the allegations that the defendants negligently installed the wiring or the light fixture in the course of the bathroom remodeling project. This alleged course of conduct is based on the same actions of the defendants as do the negligence claims. There is nothing in the record to suggest that the fire was caused by a defective wire or fixture, nor is there any evidence to indicate that the cause of this action arose out of something other than the alleged negligent installation. Mr. McMillan’s own expert, in the plaintiffs supplemental answers to interrogatories, stated that it is his opinion that it was the negligent installation of electrical work and light fixtures, in addition to the negligent inspection of the electrical work performed, which caused and contributed to the McMillans’ fire. Applying this opinion to the facts of the case, the gist of this action is the alleged negligence of the defendants in their conduct during the McMillan remodeling project, not the condition of the product or any unfair or deceptive acts in dealing with the McMillans. Mr. McMillan cannot escape the scope of the statute by simply recasting his negligence claim in the form of an implied warranty or c. 93A claim. See McDonough, 412 Mass. at 643. Mr. McMillan’s implied warranty and c. 93A claims are barred by the statute of repose because to hold otherwise “would nullify the purpose of the statute.” Klein, 386 Mass. at 710; see also Dighton, 399 Mass. at 691.
Mr. McMillan also claims a breach of express warranty. The theory of this claim is that Sears is liable to Mr. McMillan for failing to provide a licensed contractor to install the fixtures in the bathroom as allegedly promised in the contract. Specifically, Mr. McMillan claims that Sears expressly warranted in the contract to “arrange for a contractor (licensed where required by law) to make the installation of materials.” This provision cannot be construed to hold that Sears expressly guaranteed a specific result. See Anthony’s Pier Four, 396 Mass. at 823, citing Clevenger v. Haling, 379 Mass. 154, 157-59 (1979) (to make a claim for breach of express warranty, plaintiff must demonstrate that the defendant promised a specific result).
First, the provision on which Mr. McMillan bases his claim is actually found in the section entitled “Authorization” and is not encompassed in the separate warranty section of the contract. The provision merely authorizes Sears to hire a contractor to install the fixtures; it does not guarantee a specific result. Second, the alleged promise is limited to arranging for a contractor, licensed where required by law. This is simply a promise to comply with existing law. That is, if the law requires a licensed contractor on the job, Sears contracted to engage a licensed contractor.[4] This provision does not impose a higher duty on Sears than whatever is required by the applicable law. “(A]n express warranty is one in which the standard of performance is set by the defendant’s promises, rather than imposed by law.” See Coca-Cola Bottling Group, Inc. v. Weston & Sampson Engineers, Inc., 45 Mass.App.Ct. 120, 128 (1998). Thus, by the terms of the contract, Sears only provided the McMillans with an implied warranty that it would exercise the standard of reasonable care required of members of its profession, and as stated previously, such a claim is barred by the statute of repose.
There is no evidence that B&B promised a specific result either orally or in writing. In the absence of proof of such a promise, Mr. McMillan’s breach of express warranty claim against B&B and Mr. Reposa must also fail. See Anthony’s Pier Four, 396 Mass. at 822 (plaintiff must demonstrate that the defendant promised a specific result either orally or in writing to make out a claim for express warranty).
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion for summary judgment be ALLOWED.

Mr. McMillan argues that Ms. Ogle was not a licensed construction supervisor, thus not qualified to design the McMillan remodeling project and not entitled to protection under the statute of repose. The statute, however, does not place any consideration on whether an individual is qualified to render particularized services for the improvement of real property. Rather, the sole emphasis is whether that individual is involved in a protected activity for the improvement to a particular piece of property.

McMillan’s claim that the remodeling project required the presence of a licensed construction supervisor is unfounded. The regulation cited by McMillan, 780 Code of Mass. Regs. 109.1.1, only applies to alterations “involving the structural elements of buildings and structures." There is no evidence that the project involved the alteration of any structural elements.