SUPREME JUDICIAL COURT 
 
 TRUSTEES OF BOSTON UNIVERSITY vs. CLOUGH, HARBOUR & ASSOCIATES LLP

 
 Docket:
 SJC-13685
 
 
 Dates:
 February 5, 2025 - April 16, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Repose, Statute of. Contract, Indemnity, Architectural services, Performance and breach. Indemnity. Practice, Civil, Summary judgment
 
 

             Civil action commenced in the Superior Court Department on July 2, 2020.
            The case was heard by Michael J. Pineault, J., on a motion for summary judgment.
            The Supreme Judicial Court granted an application for direct appellate review.
            Michael T. Sullivan (William F. Burke also present) for the plaintiff.
            Eric A. Howard (Thomas D. Duquette, Jr., & Shaun D. Loughlin also present) for the defendant.
            David J. Hatem, Jon C. Cowen, Kelly Martin Malone, & Dillon Aisenberg, for American Council of Engineering Companies of Massachusetts, amicus curiae, submitted a brief.
            WENDLANDT, J.  The defendant, Clough, Harbour & Associates LLP (CHA or architect), agreed to design a new athletic field for the plaintiff, Trustees of Boston University (university).  These sophisticated parties specifically negotiated the terms of an express indemnification provision pursuant to which CHA promised to indemnify the university for "any and all" expenses incurred by the university as a result of the architect's "negligen[t]" design.  
            Unfortunately, a defect in CHA's design caused the university to incur expenses to fix the field in order to render it usable for its intended purpose.  Pursuant to the indemnification provision, the university submitted the bill for its expenses to CHA; CHA declined to pay.  More than six years after the field first opened, the university brought the present action against CHA for breach of the indemnification provision.
            This case presents the question whether G. L. c. 260, § 2B (tort statute of repose), which bars "[a]ction[s] of tort" for damages arising out of a design defect in an improvement to real property six years after the opening of the improvement to use, bars the university's contract claim.  Concluding that it does not, we reverse the decision of the Superior Court judge allowing summary judgment in favor of CHA.[1]
            1.  Background.  a.  Facts.  The material facts are largely undisputed; we view the facts in the light most favorable to the nonmoving party, here, the university.  See Gibney v. Hossack, 493 Mass. 767, 768 (2024); Dorchester Mut. Ins. Co. v. Miville, 491 Mass. 489, 492 (2023) ("The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law" [citation omitted]).
            On June 25, 2012, the university and CHA entered into a contract pursuant to which, in exchange for approximately $970,000, CHA agreed to design a synthetic turf athletic field for the university; the field was to be located above a parking structure also to be designed by CHA.  The contract included an indemnification provision specifically negotiated by the parties.[2]  Pertinent to our analysis, it provided:  "To the fullest extent permitted by law, [CHA] shall indemnify . . . [the university] . . . from and against any and all . . . expenses, including, but not limited to, reasonable attorney's fees, to the extent caused . . . by the negligence of [CHA]."
            The new athletic field hosted its first sporting event on August 31, 2013.  From the onset, however, the university experienced numerous problems with the field because of defects in its design.  Briefly, CHA's design failed to account for seasonal expansion in the joists of the parking structure; this resulted in depressions in the field that rendered it unsafe for hosting athletic events. 
            The university incurred more than $25,000 in expenses to render the field usable as an athletic field.  Pursuant to the indemnification provision, the university demanded that CHA indemnify it for the expenses.  CHA declined.  More than six years after the university first started using the field, the university sued CHA for breach of the indemnification provision.[3]
            b.  Prior proceedings.  CHA moved for summary judgment on the basis that the tort statute of repose, which eliminates a cause of action in tort six years after the opening of an improvement to real estate, see note 4, infra, barred the university's indemnification claim.  Relying on the Appeals Court's unpublished decision in University of Mass. Bldg. Auth. v. Adams Plumbing & Heating, Inc., 102 Mass. App. Ct. 1107 (2023), a Superior Court judge allowed the motion.  The university timely appealed.  
            2.  Discussion.  a.  Standard of review.  We review the allowance of a motion for summary judgment, as well as questions of statutory construction, de novo.  See Gibney, 493 Mass. at 770; Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021).  
            b.  Tort statute of repose.  CHA argues that the tort statute of repose[4] operates to bar the university's indemnification claim, which indisputably was filed more than six years after the opening of the athletic field, because, although the claim ostensibly is based in the parties' contract, the contractual provision requires CHA to indemnify the university for CHA's negligence, and a negligence action is itself an action in tort.  
            By the statute's plain terms, the tort statute of repose "does not apply to contract actions," and "expressly provides a limitation only for actions of tort."  Klein v. Catalano, 386 Mass. 701, 718 (1982).  See Patel v. 7-Eleven, Inc., 489 Mass. 356, 362 (2022), S.C., 494 Mass. 562 (2024) (clear and unambiguous statutory language is conclusive of legislative intent).  That the university has styled its claim as one for breach of "contract" is not dispositive, however; instead, we look beyond such labels to examine the "gist of the action" to determine whether the tort statute of repose bars the claim.  See Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc., 396 Mass. 818, 823 (1986), quoting Hendrickson v. Sears, 365 Mass. 83, 85 (1974) (party may not "escape the consequences of [the tort] statute of repose . . . merely by labelling the claim as contractual").  See also Gomes v. Pan Am. Assocs., 406 Mass. 647, 648 (1990) (examining gist of action to enforce express indemnification and determining it was contractual and not barred by tort statute of repose).
            "A key difference between an action in tort and an action in contract is that in the latter, 'the standard of performance is set by the defendants' promises, rather than imposed by law.'"  Bridgwood v. A.J. Wood Constr., Inc., 480 Mass. 349, 355 (2018), quoting Anthony's Pier Four, Inc., 396 Mass. at 822.  Thus, we have determined that the tort statute of repose applies to a claim for breach of an implied warranty, where the duty is imposed by law[5] and "the elements for breach of implied warranty and for negligence claims are the same," Anthony's Pier Four, Inc., supra at 823, but does not apply to a claim for breach of an express warranty where the duty arises from a contracting party's express agreement to guarantee a particular result.  Compare Klein, 386 Mass. at 719 & n.19 (tort statute of repose barred breach of implied warranty claim), with Anthony's Pier Four, Inc., supra ("[a] claim for breach of express warranty differs . . . from a negligence claim because the plaintiff must demonstrate that the defendant promised a specific result").[6]  See generally W.L. Prosser & W.P. Keeton, Torts § 92, at 655-656 (5th ed. 1984) (where obligation "could not have existed but for a manifested intent, then contract law should be the only theory upon which liability would be imposed").  
            Our decision in Gomes, 406 Mass. at 648, is instructive.  There, the defendant architect designed a mall for the owner, and the parties similarly agreed to a contractual indemnification provision tied, at least in part, to a negligence standard.  Id. at 648 n.1.  The owner sought to enforce the parties' contractual indemnification provision when, long after the time defined by the tort statute of repose had passed, the owner was sued by a mall patron for negligence arising from the mall's design.  Id. at 648.  We looked to the gist of the owner's claim against the architect and concluded that it was grounded in the contractual indemnification provision, even though the underlying mall patron's claim was for negligence.  Id.  We explained, that "[t]he parties freely and intelligently entered into a contract of indemnification.  They should be held to it."[7]  Id.
            Similarly, here, the gist of the university's action is "essentially contractual -– the enforcement of a contract of indemnification."  Id.  In section 10.10 of the parties' contract, CHA expressly promised to indemnify the university if it suffered any expenses due to CHA's negligence.  See Gomes, 406 Mass. at 648.  CHA's duty to indemnify the university for CHA's negligence is not one imposed by law; rather, it is a promise to which CHA freely and intelligently chose to be bound.[8]  See Bridgwood, 480 Mass. at 355; Gomes, supra.  
            Indeed, while the parties chose to incorporate the negligence standard of care into the indemnification provision, the elements of the university's contractual indemnification claim differ from a claim for negligence.  See Klein, 386 Mass. at 719.  To prevail on its claim, the university must show the existence of a valid and enforceable indemnification clause, the occurrence of an event triggering the duty to indemnify, the provision of adequate notice to the indemnitor, and the failure of the indemnitor to fulfill its obligation as specified in the indemnification clause.  See Psychemedics Corp. v. Boston, 486 Mass. 724, 731-732 (2021).  By contrast, a negligence claim requires a plaintiff to show duty, breach, causation, and damages.[9]  See Donovan v. Philip Morris USA, Inc., 455 Mass. 215, 228 (2009) (noting common elements of negligence claim).  Accordingly, the university's claim is contractual in nature, and the tort statute of repose does not bar it.  
            3.  Conclusion.  We reverse the order allowing CHA's motion for summary judgment and remand for further proceedings. 
So ordered.
 
 
 
            [1] We acknowledge the amicus brief submitted by the American Council of Engineering Companies of Massachusetts.
            [2] The indemnification provision does not appear in the American Institute of Architects (AIA) Standard Form of Agreement Between Owner and Architect, AIA Document B101-2007, used by the parties. 
            [3] The university asserted two additional claims, which were dismissed and are not on appeal.
            [4] The tort statute of repose provides:
"Action[s] of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of:  (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner" (emphases added).
G. L. c. 260, § 2B, first par.  "A statute of repose eliminates a cause of action at a specified time, regardless of whether an injury has occurred or a cause of action has accrued as of that date."  Bridgwood v. A.J. Wood Constr., Inc., 480 Mass. 349, 352 (2018).  The tort statute of repose thus eliminates a cause of action in tort due to, inter alia, a deficient design six years after the opening of the improvement to use.  See G. L. c. 260, § 2B, first par.
            [5] See Bridgwood, 480 Mass. at 356 (determining that tort statute of repose barred G. L. c. 93A claim based on failure to comply with standards for electrical work set forth in G. L. c. 142A, § 17 [10]); McDonough v. Marr Scaffolding Co., 412 Mass. 636, 639 (1992) (tort statute of repose barred breach of implied warranty of merchantability claim under duty imposed by G. L. c. 106, § 2-314 [1990 ed.]); Dighton v. Federal Pac. Elec. Co., 399 Mass. 687, 691 n.6, cert. denied, 484 U.S. 953 (1987) (tort statute of repose barred implied warranty claim imposed by law).
            [6] CHA incorrectly contends that our decision in Anthony's Pier Four, Inc., 396 Mass. at 822, created an "exception" to the applicability of the tort statute of repose limited to claims arising from an express warranty, leaving other contractual provisions like the indemnity provision in this case subject to the six-year tort repose period where the contract pertains to improvements to real estate.  See, e.g., Gomes, 406 Mass. at 648 (rejecting claim that tort statute of repose bars contract-based claim for indemnification).
            [7] CHA contends that the parties' indemnification provision in this case is materially different from the provision at issue in Gomes because the Gomes provision required the architect to indemnify the owner for any injury "arising . . . from the work" and "from any actual or alleged act, omission or negligence."  Gomes, 406 Mass. at 648 n.1.  Thus, CHA maintains, the Gomes indemnity provision encompassed any injury arising from any work done under the contract, regardless of the architect's negligence, and the decision is relevant only to similarly broad indemnification agreements.  Nothing in our analysis in Gomes supports such a narrow view of its holding, which was based on the architect's express promise to be bound to indemnify the owner when, as occurred, the mall patron sued the owner for negligence.  Id. at 648.  As here, the duty in Gomes was not one implied in law; rather, the duty was one to which the architect freely chose to be bound by contract.  Id.
            [8] We have discussed recently the history and legislative intent in the Legislature's enactment of the tort statute of repose.  See Bridgwood, 480 Mass. at 353-354 (explaining legislative intent of tort statute of repose to limit architect's potentially unlimited liability arising after abrogation of common-law rule that limited architect's liability exposure to those with whom it was in privity).  Holding sophisticated parties to their express contractual promises to each other does not implicate the policy enshrined in the tort statute of repose of protecting architects and builders from potentially lifelong liability imposed solely by operation of law.  See id. 
            [9] Unlike the damages available for negligence, here the parties negotiated that CHA would indemnify the university for "reasonable attorney's fees" in addition to the university's expenses incurred to fix the field.  See John T. Callahan & Sons, Inc. v. Worcester Ins. Co., 453 Mass. 447, 449 (2009) (following "'American Rule':  in the absence of statute, or court rule, we do not allow successful litigants to recover their attorney's fees and expenses").