HANSON HOUSING AUTHORITY *vs.* DRYVIT SYSTEM, INC., & others.[1]

No. 89-P-150.

Plymouth. April 12, 1990. - October 23, 1990.

Present: BROWN, CUTTER, & JACOBS, JJ.

*Limitations, Statute of. Contract*, Construction contract, Performance and breach.

In an action brought by a housing authority in 1987 seeking damages from the designer and supplier of construction components for alleged design defects in the materials supplied, summary judgment was properly entered for the defendant, as all claims were barred by the applicable statutes of limitation (G. L. c. 260 § 2A; G. L. c. 106, § 2-318; and G. L. c. 260, § 5A), where the defendant's alleged negligence and misrepresentations were not inherently unknowable and where the plaintiff, in the circumstances, knew or should have known by the end of 1982 of the possible existence of a legal claim against the defendant. [444-448]

CIVIL ACTION commenced in the Superior Court Department on May 21, 1987.

The case was heard by *James P. Lynch, Jr.,* J., on a motion for summary judgment, and entry of separate and final judgment was ordered by *John M. Xifaras,* J.

*David S. Rosenthal* (*John P. Connelly* with him) for the plaintiff.

*Lisa D. Campolo* for Dryvit System, Inc.

JACOBS, J. Before us is the issue of the timeliness of the claims against the defendant, Dryvit System, Inc. (Dryvit). On May 21, 1987, the plaintiff, Hanson Housing Authority,

---

[1] A separate judgment was entered for Dryvit System, Inc., the only defendant involved in this appeal. See Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). Additional defendants named in the complaint were Concrete Construction Co. of Everett, Inc., and Travelers Indemnity Company. Cape Cod Lathing & Plastering, Inc., was also named a defendant by way of a third-party complaint.

filed a complaint in the Superior Court against a contractor, Concrete Construction Co. of Everett, Inc. (Concrete), Concrete's bond surety, and Dryvit. The plaintiff appeals from a summary judgment entered on the stated ground that all of the claims asserted by it against Dryvit were barred by various applicable statutes of limitation.

The plaintiff had engaged Concrete to construct a housing project containing seventeen apartment buildings, a garage, and a community building. Among other things, the contract documents required Concrete to install an exterior wall system designed and supplied by Dryvit (the Dryvit System).[2] Concrete retained a subcontractor (who was ultimately impleaded in this action) to install the Dryvit System. Dryvit, other than supplying the components, was not involved in the physical installation of the Dryvit System. A certificate of completion of the project was issued by the plaintiff to Concrete on June 16, 1981.The plaintiff, in its complaint, alleged generally that the walls of the project were improperly constructed; that cracks developed in the exterior finish, joints, and caulking; and that, as a result, water penetrated the buildings causing "serious structural and cosmetic damage" to the project. The plaintiff's complaint, in addition to stating claims against Concrete and its surety, contained the following described eight counts against Dryvit: Count VI, for negligent design; Count VII, for negligent failure to warn and provide adequate instructions; Count VIII, for negligent training and certification; Count IX, for negligent inspection and supervision; Count X, for breach of implied warranties; Count XI, for breach of express warranties; Count XII, for misrepresentation; and Count XIII, for violation of G. L. c. 93A, § 11. Dryvit, in its answer and motion for summary judgment, asserted that all of the claims against it were time barred by the applicable statutes of limitation.[3]

---

[2]The Dryvit System has four components and is installed as an exterior wall facade by attaching polystyrene insulation boards to a gypsum substrate, then applying primus adhesive, into which fiberglass mesh is embedded before applying a finish coat.

[3]The parties are in apparent agreement that the negligence, misrepresentation, and breach of warranty claims generally are subject to the

The materials properly before the judge establish the following uncontroverted facts. An architect and a full-time clerk of the works were on the project site on behalf of the plaintiff during construction. The contract documents gave the architect the right to inspect and uncover any of the construction work. In 1980, the project's maintenance supervisor observed that some caulking on an expansion joint between buildings numbered seven and eight was "falling out."[4] In 1982, the maintenance supervisor noticed some bubbling in the Dryvit System finish coat at a spot in the end wall of building nine. At the time, he pushed against the wall in the area of the bubbling and "felt it moving back and forth." The plaintiff had the bubbling repaired shortly thereafter. Also, in 1982, the maintenance supervisor noticed "a couple of big cracks," one where buildings thirteen and fourteen were joined and the other where buildings fifteen and sixteen were joined.

On May 17, 1982, the maintenance supervisor and a representative of Dryvit inspected the exterior wall system of the project. The Dryvit inspector observed "some bubbling and cracking of an exterior wall . . ., some vertical cracks at right angle intersections of some walls [and] some failure of the caulking." He also observed that, "[w]here finish was removed from bubbled area, fiberglass mesh was not imbedded into the primus adhesive and was totally exposed above the primus adhesive." Although these observations are not imputed directly to the plaintiff, they confirm the existence and detectability, in 1982, of the physical signs observed. By a letter dated July 8, 1982, an architect notified the Department of Community Affairs of the Commonwealth that the

---

three-year statutes of limitation set forth in G. L. c. 260, § 2A, and G. L. c. 106, § 2-318, and that the claim under G. L. c. 93A, § 11, is subject to the four-year statute of limitations in G. L. c. 260, § 5A. Neither party argues the applicability of the repose provision of G. L. c. 260, § 2B.

[4]The plaintiff does not dispute that facts known to its maintenance supervisor are attributable to it.

plaintiff had inquired of him if it had any recourse with respect to "Dryvit leaks" at the project.[5]

Between 1982 and 1985, the plaintiff was not informed of any aggravation of the condition of the exterior wall system or of any evidence of water penetration or other deficiency. In 1985, a consultant reported to the plaintiff that he observed some exterior cracks and mesh protrusion in the exterior walls of the project. In 1986, he concluded, on the basis of testing and laboratory analysis, that water had penetrated the exterior walls through the cracks in the project's walls and caused damage to portions of the walls interior to the Dryvit System. He reported these conclusions to the plaintiff.

In ordering summary judgment, the judge relied on *Melrose Hous. Authy.* v. *New Hampshire Ins. Co.*, 402 Mass. 27 (1988). He noted that the plaintiff, during construction, was in a situation similar to that presented in *Melrose*, in that it had available to it the services of an architect with authority to inspect and test the work and a clerk of the works who was employed on a full-time basis to inspect the work. He found that the plaintiff "had the means at its disposal to learn of the defects while construction was in progress," and that, "[t]herefore, the discovery rule does not apply, because the defects were not inherently unknowable at the time of construction." The "discovery rule" holds that "certain causes of action based on inherently unknowable wrongs do not accrue until the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct." *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 129 (1982), citing *Hendrickson* v. *Sears*, 365 Mass. 83 (1974).

---

[5]The plaintiff does not quarrel with Dryvit's contention that notice to the Department of Community Affairs of the Commonwealth, in effect, was notice to it by operation of G. L. c. 23B. It does argue, however, that the July 8, 1982, letter constituted inadmissible hearsay and should not be relied upon by this court. There is no indication in the record that the affidavit containing the letter was the subject of a motion to strike. The affidavit, therefore, properly may be considered. *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 763 n.12 (1976). In any event, the relevance of the letter is not found in the truth of its contents but in its tendency to charge the plaintiff with awareness in 1982 of exterior wall deficiencies. Liacos, Massachusetts Evidence 262-263 (5th ed. 1981).

The judge concluded that the applicable statutes of limitation began running when the certificate of completion was issued (1981), and that the plaintiff's claims were barred by the operation of those limitations well before the complaint was filed.

The plaintiff argues that the judge mistakenly read its complaint against Dryvit as being grounded on improper installation of the exterior wall system rather than defects in its design; that its complaint presents essentially a products liability case; that the design defects were inherently unknowable at the time of construction and installation; that the discovery rule was, therefore, applicable to this action; and that summary judgment should not have been granted since genuine issues exist as to when the plaintiff knew or should have known that it had been harmed by the defendant's conduct.[6]

In the main, the judge's reliance on *Melrose* was appropriate. Most of the plaintiff's claims against Dryvit relate to matters which could have been discovered by the architect and clerk of the works during the construction phase of the project. Any negligence of Dryvit in providing instructions (Count VII), in training and certification of installers (Count VIII), and in inspecting the wall construction (Count IX) was readily discoverable before completion of construction and, therefore, was not inherently unknowable. *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Engrs., Inc.*, 396 Mass. 818, 825-826 n.9 (1986)(qualifications of project workmen and subcontractors are not inherently unknowable). See also *Graveline* v. *BayBank Valley Trust Co.*, 19 Mass. App. Ct. 253 (1985)(plaintiff charged with knowledge of that which could be discerned by an inspection at the time of purchase of home).

---

[6]Implicit in the plaintiff's argument is the notion, which we reject, that the appeal must stand or fall on the rationale articulated by the judge, i.e., the applicability of *Melrose Hous. Authy.* v. *New Hampshire Ins. Co.*, *supra*. We "may consider any ground supporting the . . . motion." *Champagne* v. *Commissioner of Correction*, 395 Mass. 382, 386 (1985).

It is established that misrepresentation claims may be subject to the discovery rule. *Friedman* v. *Jablonski*, 371 Mass. 482 (1976). *Graveline* v. *BayBank Valley Trust Co., supra.* The plaintiff's misrepresentation count (Count XII), however, is not entitled to that benefit. For the most part, it repeats the negligence allegations of Counts VII, VIII, and IX, and, therefore, as we have indicated in our discussion of those counts, does not implicate inherently unknowable facts. The remaining allegations of Count XII are to the effect that Dryvit failed to disclose certain significant information. They are nothing more than averments of fraudulent concealment. "There is no allegation of any positive acts of concealment of the cause of action, and, in the absence of a fiduciary relationship, silence cannot constitute fraudulent concealment." *Friedman* v. *Jablonski*, 371 Mass. at 485 n.3. There being no evidence of a fiduciary relationship between the plaintiff and Dryvit, the claims alleging failure to disclose were properly swept up by the summary judgment along with the rest of the claims in the misrepresentation count.

Portions of Count VI of the plaintiff's complaint, given the manifold benefits of liberal construction,[7] reasonably may be read to allege inherently unknowable design defects in the form of components which were not thick enough to permit the proper imbedding of the fiberglass mesh and to prevent cracking and water penetration. Similarly, the warranty claims (Counts X and XI) could be construed as alleging inherently unknowable breaches of warranties relating to the exterior walls remaining waterproof and free of cracks and maintenance problems. The plaintiff argues that such allegations implicate the discovery rule and that there are genuine issues of fact as to when it learned or should have learned that it had been harmed by the design defects and breaches of warranty.

The Supreme Judicial Court has stated:

"In all cases the statute of limitations begins to run when the injured person has notice of the claim. The

---

[7]See Mass.R.Civ.P. 8(f), 365 Mass. 751 (1974).

'notice' required is not notice of every fact which must eventually be proved in support of the claim. These details are properly the subject of requests for discovery once an action is filed. Rather, 'notice' is simply knowledge that an injury has occurred." (Citation omitted.) *White* v. *Peabody Constr. Co.*, 386 Mass. at 130.

The requisite knowledge of injury occurs in a products liability action (whether brought under a negligence theory or a breach of warranty theory) when the plaintiff knows or reasonably should know that it has been harmed by the defendant's conduct. *Fidler* v. *E. M. Parker Co.*, 394 Mass. 534, 544-545 (1985), approving the standard set forth in *Fidler* v. *Eastman Kodak Co.*, 714 F.2d 192, 199 (1st Cir. 1983). *Malapanis* v. *Shirazi*, 21 Mass. App. Ct. 378, 383 n.5 (1986). It is not required that the extent of injury be known before accrual of a cause of action. *Mansfield* v. *GAF Corp.*, 5 Mass. App. Ct. 551, 555 (1977). "If knowledge of the extent of injury were to control the accrual of a cause of action, the fixed time period of statutes of limitations effectively would be destroyed." *Olsen* v. *Bell Tel. Labs., Inc.*, 388 Mass. 171, 175 (1983).

This court has stated that the discovery rule starts a limitations period running "when a reasonably prudent person (in the tort claimant's position), reacting to *any suspicious circumstances* of which he might have been aware (what the Court of Appeals in *Fidler* called 'likely cause'), should have discovered that he had been harmed by [the defendant]" (emphasis added). *Malapanis* v. *Shirazi, supra* at 383.[8] The controlling question is whether a plaintiff's knowledge, actual or attributed, of both harm to it and the likely cause of such harm, was sufficient to stimulate further inquiry which was likely to alert it to a cause of action against a defendant. *Id.*

---

[8]The "suspicious circumstances" approach to accrual of a cause of action is to be distinguished from that applied when wrongful conduct is discernible to a party but harm to it has not yet materialized. See, e.g., *International Mobiles Corp.* v. *Corroon & Black/Fairfield & Ellis, Inc., ante* 215 (1990).

at 388. *Errichiello* v. *Eli Lilly & Co.*, 618 F. Supp. 484, 486 (D. Mass. 1985).

There are circumstances in which the record on appeal is sufficient to permit appellate determination of the mixed factual and legal question of when a party knew or should have known it had been harmed by another. *Melrose Hous. Authy.* v. *New Hampshire Ins. Co.*, 402 Mass. at 31 n.4. *Malapanis* v. *Shirazi*, 21 Mass. App. Ct. at 383, and cases cited. We believe that the record in this case allows for such a determination.

The circumstances known or attributable to the plaintiff by the end of 1982 were such as to alert it to the possible existence of a cause of action against Dryvit. The "falling out" of caulking, the bubbling in the finish coat, the two "big cracks," the movability of a portion of an exterior wall, and the reference to "Dryvit leaks," considered together, were sufficient to start the running of any applicable limitation clocks, even when considered "with an indulgence in the plaintiff's favor." *National Assn. of Govt. Employees, Inc.* v. *Central Bdcst. Corp.*, 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). Collectively, these circumstances were suspicious. They alone reasonably should have alerted the plaintiff to the possible existence of a legal claim against Dryvit. In any event, these circumstances should have stimulated further investigation of the type ultimately engaged in by the plaintiff's consultant. As evidenced by the report of that consultant, such investigation would have confirmed the existence of harm and pointed to the defendant as a likely cause. The plaintiff does not contend otherwise. There is no question but that, by the end of 1982, the plaintiff was no longer in a state of "blameless ignorance."[9]

The plaintiff's fallback position is that summary judgment should have been limited to those buildings "on which blemishes were observed in 1982." This argument fails to recognize that the installation of the Dryvit System was accomplished under one contract and that the plaintiff alleges that

---

[9]The phrase is from *Urie* v. *Thompson*, 337 U.S. 163, 170 (1949).

its injuries are systemic and not limited to specific buildings. No rationale is offered for permitting the suspicious circumstances of 1982 to serve as notice of a potential cause of action with respect to some, but not all, of the buildings in which the Dryvit System was installed.

In its c. 93A count (XIII), the plaintiff bases its claim of unfair and deceptive conduct on Dryvit's alleged breaches of warranty and misrepresentations. The accrual dates of the c. 93A claims are established by the same principles as govern the determination of the underlying actions. See *International Mobiles Corp.* v. *Corroon & Black/Fairfield & Ellis, Inc., ante* 215, 221 (1990). Accordingly, the c. 93A actions accrued no later than the end of 1982. The four-year limitations period set by G. L. c. 260, § 5A, therefore, had expired by 1987, when the plaintiff filed this action.

*Judgment affirmed.*