ZOBEL, J.
Procedure
Plaintiffs claims arise from the involvement of plaintiff and defendant Ford (“Ford”) in ACA Group, Inc. (“ACA”), a now defunct closely-held Massachusetts corporation. Plaintiff brought this action on May 16, 1994, alleging as to Ford, a partner in defendant *419 Bingham, Dana & Gould (“the Firm”): breach of fiduciary duly (Count I): fraud/misrepresentation (Count II); breach of contract (Count III); interference with contractual and advantageous relations (Count IV); violation of Chapter 93A (Counts V-VII); and as to the Firm only, vicarious liability (Count VIII).
Ford has moved for summary judgment on Counts I-VII, citing limitations grounds. Plaintiff has cross-moved for summary judgment on Counts I, II, V, VI and VII against Ford. On Count VIII, plaintiff and the Firm have reciprocal summary judgment motions.
Facts
From 1983 to 1989, plaintiff and Ford served on ACA’s Board of Directors. Ford also acted as a corporate officer.
In June 1988, Collette, a wholly-owned subsidiary of ACA, borrowed $505,000 from the New York Business Development Corporation (“NYBDC”). In connection with this transaction, each ACA stockholder executed an Assignment Pledge and Security Agreement, which provides, in relevant extract:
The Undersigned, (hereinafter called “Assignor” . . .), in consideration for a term loan by New York Business Development Corporation (“Assignee”) to Collette Manufacturing Company, .. . (“Borrower”), in an amount not to exceed $505,000.00 (the “Loan”)... does hereby deliver to the Assignee, and does hereby assign, pledge and grant a security interest in favor of the Assignee, in all of the Assignor’s rights, title and interest in and to the issued and outstanding shares of common stock of the Massachusetts business corporation ACA Group, Inc., . . . (the “Collateral”).
Upon Borrower’s failure to pay all or any part of the principal or interest on the Loan and the Note when due and payable ... the Assignee has the authority to demand and receive all sums due from the Collateral without demand on Assignor, advertisement or public or private sale, all of which are hereby expressly waived. * * * Assignor hereby waives to the extent permitted by law, all rights of redemption and appraisement, except the notice requirement in addendum # 1.
Each stockholder also executed a Waiver of Rights Under Stockholders Agreement, providing, again in relevant extract:
1. The undersigned, as ACA Stockholders, and ACA consent that the provisions of paragraph 3 — "Restrictions on Transfers — Right of First Refusal"— and paragraph 4 — "Stockholders Put Rights" — of the Stockholders Agreement are waived for purpose of the delivery, assignment and pledge of the shares of ACA to the Lender in accordance with the Loan Agreement.
2. The undersigned further consent and waive any other terms, provisions and conditions of the Stockholders Agreement which may be construed to limit, prevent or restrict the delivery, assignment and pledge of the ACA shares to the Lender and the enforcement provisions in accordance with the Loan Agreement.
The Board of Directors concluded in August 1989 that ACA should file for bankruptcy. Further, the Board considered and approved a proposal from James Hendricks to purchase ACA. In December 1989, Richard Lamontagne, ACA’s Chief Financial Officer, notified plaintiff that this proposal had failed because Hendricks could not obtain the necessary financing. When ACA failed to meet its payments, the bank and NYBDC foreclosed on the assets which ACA had pledged as collateral. Hendricks purchased these assets, including ACA’s real estate.
On March 27, 1990, all former stockholders were notified that their ACA investments had no value. On December 27, 1990, plaintiff informed Lamontagne that he intended “to recoup the full value of [his] cash investment which goes back to 1982.” Plaintiff also stated “if this matter is not resolved amicably within 30 days, I will seek legal advice.”
OnApril 16,1991, plaintiff, represented by counsel, sent letters to both Hendricks and Lamontagne demanding relief under G.L.c. 93A. The letter stated in part:
It is our belief that your actions constitute a breach of your fiduciary duty to Mr. Leigh in his capacity as both a fellow director and a minority shareholder of the corporation . . .
In short, we believe that you used your position as a corporate officer and information gained as a result to usurp an opportunity not afforded to the corporation, and acted primarily to obtain a pecuniary interest for yourself at my client’s expense ...
Your conduct constitutes an unfair or deceptive act or practice under said Chapter 93A. Your failure to tender a reasonable settlement offer within thirty (30) days of your receipt of this letter will result in the filing of a legal action pursuant to Chapter 93A seeking treble damages, costs and attorneys fees.
On May 16, 1991, Ford, then a partner at the Firm, responded to plaintiffs demand against Lamontagne, denying that Lamontagne had engaged in unfair or deceptive acts in connection with ACA.
Ford’s Motion For Summary Judgment
Ford argues that the three-year statute of limitations in tort actions bars Counts I, II, and IV, because the claim accrued either in August 1989, when plaintiff learned that ACA was approaching bankruptcy, or at the latest by March 1990, when the stockholders learned that their investments were worthless. Plaintiff responds that the so-called “discovery” rule, applies because his injury was inherently unknowable before May 16, 1991 when he received Ford’s reply letter on behalf of Lamontagne. Alternatively, plaintiff claims that a genuine issue of fact exists as to when *420 he reasonably should have known that Ford caused his injury.
Tort actions are subject to a three-year limitations period, G.L.c. 260, §2A, commencing when defendant’s wrongful conduct injures plaintiff, Pagliuca v. Boston, 35 Mass.App.Ct. 820, 824 (1994). A claim based on an “inherently unknowable” wrong, Olsen v. Bell Telephone Laboratories, Inc., 388 Mass. 171, 175 (1983), however, accrues only when the plaintiff discovers, or reasonably should have discovered, that the defendant’s conduct caused the actionable harm, Bowen v. Eli Lilly & Co., 408 Mass. 204, 205-06 (1990). The plaintiff need not have notice of every fact relevant to the claim, see White v. Peabody Construction Co., 386 Mass. 121, 130 (1982), nor know the full extent of the injury, Olsen v. Bell Telephone Laboratories, Inc., supra, at 175. “The important point is that the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused [Plaintiffs] injury,” Bowen v. Eli Lilly & Co., supra, at 207.
Viewing the record in the light most favorable to plaintiff, this Court concludes that the claim accrued no later than March 27, 1991, when the ACA stockholder group members learned their investments had dropped to zero value. It was then that a reasonably prudent person in plaintiffs position, particularly a member of the Bar, should have been aware of “suspicious circumstances” and realized that Ford had harmed him, Hanson Housing Authority v. Dryvit System Inc., 29 Mass.App.Ct. 440, 446 (1990). Because this action commenced more than four years thereafter, plaintiffs tort claims and Consumer Act claims are time-barred, G.L.c. 260, §§2A, 5A.
Count III alleges that Ford breached a Right of First Refusal clause in the 1983 Stockholders Agreement, which provides, in relevant extract:
So long as this Agreement is in force and effect, no Stockholder shall sell, assign, transfer, pledge or otherwise dispose of or encumber his Shares of Debentures, whether with his consent or by operation of law, without all of such Shares or Debentures (collectively “Securities”) being first offered to the Corporation and the other Stockholders as provided in subsection 3.2 below, except that no such offer shall be required in the case of transfer, upon death of a Stockholder or otherwise, to Permitted Transferees.
Ford, it is alleged, violated the clause by helping transfer control of ACA to Hendricks for less than adequate consideration, without first offering plaintiff an opportunity to obtain control. Viewed as a contract claim, subject to a six-year limitations period, G.L.c.260, §2, the action would be timely. However, as the Complaint, §63, makes clear, the gist of plaintiffs claim is not breach of contract, but rather Ford’s participation “in a scheme, device or artifice or common plan whereby [Plaintiffs] investment was confiscated.” Adding the words “in breach of the parties’ agreement” does not change the matrix. Plaintiff is accusing Ford of swindling, cheating, and cozening him.
Of course, it is true as an abstract proposition that dishonesty can motivate or even underlie a contractual breach; it is equally true that every contract imports an obligation of fair dealing. Nonetheless, if the heart of the claim is a wrongful taking, rather than a failure to meet contractual obligations, plaintiff is asserting a tort, not a breach of contract. Without invoking Maitland’s dictum (“The forms of action are dead, but they rule us from their graves”), if the distinction which the statute of limitations perpetuates between tort and contract is to have any meaning, courts will have to recognize it and draw lines accordingly. The claim contained in Court III is, therefore, governed as to timeliness by the three-year limitations period.
Beyond that, plaintiff appears to have waived his right of first refusal as to NYBDC; the agreements acknowledge NYBDC’s right to sell or convey the collateral (which included plaintiffs ownership interest in ACA) following Collette’s failure to pay its debt to NYBDC. That Ford may have participated in the dealings between the creditor and Hendricks does not void plaintiffs waiver.
Plaintiffs Motion for Summary Judgment
Because All Counts are out-of-time, plaintiffs motion for summary judgment is moot.
Cross-Motions on Count VIII
Plaintiff alleges that as Ford’s employer, the Firm is liable for his illegal conduct. Of course, it is undisputed that Ford engaged in legal work for Lamontagne during his tenure at the Firm. It is also undisputed that Ford did not at any time while a partner of the firm perform legal services for plaintiff; nor does the record contain any evidence that plaintiff was even Ford’s client.
ORDER
Accordingly, it is Ordered, that defendant Ford’s Motion for Summary Judgment as to Counts I, through VII be, and the same hereby is, Allowed; and it is
Further Ordered, that plaintiffs Motion for Partial Summary Judgment on Counts I, II, V, VI, VII and VIII be, and the same hereby is, Denied; and it is
Further Ordered, that defendant Bingham, Dana & Gould’s Motion for Summary Judgment is, Allowed and it is
Further Ordered, that plaintiffs Motion for Summary Judgment against Bingham, Dana & Gould be, and the same hereby is, Denied.