Toomey, J.
This case arises out of plaintiffs allegation of the fraudulent endorsement of a check. Plaintiff Veronica R. Hunt (“Hunt”) claims that her attorney, defendant Richard H. Clark (“Clark”), on behalf of the law partnership Clark & Reynolds, fraudulently endorsed a check that had been made payable to Hunt. Hunt’s complaint also includes claims against Fleet Bank (“Fleet”), the payor bank. The matter is now before the Court on Hunt’s motion for summary judgment, pursuant to Mass.R.Civ.P. 56, against Fleet. The parties were heard, the motion was taken under advisement and the plaintiffs request for summary judgment will now be DENIED.
BACKGROUND
The facts, viewed in the light most favorable to the nonmoving party, Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995), are set forth below. In June of 1992, Hunt retained the services of Clark and defendant R. Craig Reynolds (“Reynolds”), of the law offices of Clark & Reynolds, to represent her in the sale of real estate located in Belmont, Massachusetts. To that end, on August 18, 1992, Hunt gave Clark power of attorney “with full power and authority to sign any and all documents exclusive of a deed required with respect” to the sale of the property.
On August 21, 1992, after the closing, a check, representing the proceeds from the sale of the property, was sent to Clark & Reynolds. The check, in the amount of $199,059.39 was drawn on an account at Fleet and made payable to Hunt. Upon receiving the check, Clark inscribed on the check “pay to the order of Clark & Reynolds” and signed Hunt’s name. The check was then deposited into the Clark & Reynolds client funds account at the Shawmut Worcester County Bank. Fleet subsequently made payment on the check.
Hunt repeatedly inquired about the status of the sales proceeds, and Clark repeatedly responded that the Federal Depositor Insurance Corporation (“FDIC”) required that the sales proceeds be held in escrow and not disbursed to Hunt pending resolution of a title defect in the property. Clark further informed Hunt that resolution of the title defect could take more than two years. In the meantime, Hunt was told, the funds were placed in a one-year certificate of deposit account in the name of Clark & Reynolds, which was renewed in 1993 and 1994. In August of 1995, Hunt inquired again about the funds, and Clark informed Hunt that the funds would be released. In September, Hunt still had not received the funds and called Clark & Reynolds to inquire. Hunt was told by the person who answered the phone that Clark had left the firm and that no information could be provided about the funds.
Shortly thereafter, Hunt was informed, by a friend of Clark, that Clark was in severe financial trouble and could not repay the money, except in small increments over time. Furthermore, Hunt learned that there had been no title defect and that the funds had never been in an escrow account. Hunt never received a W-9 tax form or a statement from the FDIC or any bank regarding the funds.
On December 11, 1995. Clark made a payment of $2,500.00 to Hunt. Clark made no further payments. On June 15, 1996, Hunt sent a demand letter to Clark, but no response was forthcoming. As a result, Hunt filed the present complaint on November 6, 1996. Defendant Fleet filed crossclaims against Clark, Reynolds, and Clark & Reynolds on December 3, 1996.
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Communily Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14. 17 (1989). Once the moving party suggests the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id., at 17. Summary judgment, where appropriate, may be entered against the moving party. See Community Nat’l Bank, 369 Mass. at 553.
In Hunt’s motion for summary judgment, she asserts that there are no genuine issues of material fact. First, Hunt argues that it is undisputed that the power of attorney contract signed by Hunt and Clark gave Clark the power to sign documents, but not notes such as the check at bar. While Fleet does indeed dispute this assertion, the interpretation of the power of attorney contract is a matter that may be determined by a court without the need to engage in fact finding. See McQuade v. Springfield Safe Deposit and Trust Co., 333 Mass. 229, 233 (1955) (in interpreting power of attorney contract, the court “must put [itself] in the place of the parties to the instrument and give its words their plain and ordinary meaning in the light of the circumstances and in view of the subject matter”).
The power of attorney contract gave Clark the authority to sign any and all documents exclusive of a deed “required with respect to my sale of property.” The plain and ordinary construction of that language suggests that Clark was empowered to sign only those documents that were required for the sale of the property. Because the check was mailed to Clark after the closing and after the sale was completed, the *357 check’s endorsement by Clark was not a required part of the sale. The power of attorney contract did not, as a matter of law, authorize Clark to endorse the note. Insofar as his endorsement was ultra vires, his action was indeed a forgery.
In the present lawsuit. Hunt seeks recovery from the drawee bank (Fleet) for paying upon a forged endorsement. She rests upon the principle that a “drawee bank may make charges against a depositor’s account only on his authentic order and on genuine indorsements.” Gordon v. State St. Bank & Trust Co., 361 Mass. 258, 260 (1972). The Uniform Commercial Code was in effect at all times relevant to this case and provides that payment over a forged endorsement results in the payor’s liability for conversion. G.L. 106, §3-419(1)(c); General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 588 (1992). In cases of forged endorsement, §3-419(l)(c) allows a plaintiff, as the true owner of the instrument, to seek payment directly from the drawee bank. The Supreme Judicial Court has stated “the loss, ultimately, must fall on the drawee bank who was in the best position to prevent the error.” General Motors Acceptance Corp., 413 Mass. at 589. Therefore, Hunt has an actionable claim against Fleet for conversion.
For conversion actions, Massachusetts law provides a three-year statute of limitations. G.L.c. 260, §4. “In all cases the statute of limitations begins to run when the injured person has notice of the claim. The ‘notice’ required is not notice of every fact which must eventually be proven in support of the claim . . . Rather, ‘notice’ is simply knowledge that an injury has occurred.” Hanson Housing Authority v. DryvitSystem, Inc., 29 Mass.App.Ct. 440, 445-46 (1990), citing White v. Peabody Constr. Co., 386 Mass. 121, 130 (1982). In further refining the required quantum of “notice,” Hanson observed that, “the controlling question is whether a plaintiffs knowledge, actual or attributed, of both harm to it and the likely cause of such harm, was sufficient to stimulate further inquiry which was likely to alert it to a cause of action against a defendant.” Hanson Housing Authority, 29 Mass.App.Ct. at 446. Thus, the determination as to whether or not the information had by plaintiff was sufficient to constitute a limitations-triggering “notice” is fact driven and must be resolved by trial. See Riley v. Presnell, 409 Mass. 239, 247-48 (1991).
At bar, four years passed between the time Fleet paid the note and the filing of this complaint. It is not clear, however, when Hunt became aware of the injury occasioned by the combination of Clark’s forgery and Fleet’s payment. Although she questioned her attorney about the status of the money, such questioning does not necessarily demonstrate knowledge of injury. See Hanson Housing Authority, 29 Mass.App.Ct. at 445-46. It may well be possible that Hunt, in continuing to trust Clark to handle her money, was acting reasonably and ought not to be charged with knowledge of his perfidy. On the other hand, a fact finder might conclude that the lack of tax forms and bank statements in connection with her funds should have caused Hunt concern much earlier than November 6, 1993 and would warrant charging her with notice prior thereto. Accordingly, to determine when the statute of limitations began to run in this case, a factual determination with respect to Hunt’s knowledge, both actual and attributed, must be obtained. See Hanson Housing Authority, 29 Mass.App.Ct. at 446. And, as stated by Riley, 409 Mass. at 247-48, any disputed issues relative to the statute of limitations should be decided by trial. Summary judgment is, therefore, inapposite.
ORDER
It is therefore ORDERED that plaintiffs Motion for Summary Judgment is DENIED.