**POWER CONTROL DEVICES, INC., Plaintiff,**

v.

**ORCHID TECHNOLOGIES ENGINEERING AND CONSULTING, INC., Defendant.**

**Civil Action No. 2011–10697–RBC.**

United States District Court, D. Massachusetts.

Sept. 12, 2013.

---

Michael J. Carpentier, Nutter, McClennen & Fish, LLP, Boston, MA, for Plaintiff Power Control Devices, Inc.

Mick Lerner, The Lerner Law Firm P.A., Overland Park, KS, pro hac vice, Power Control Devices, Inc.

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (# 102)

COLLINGS, United States Magistrate Judge.

### I. Introduction

The plaintiff, Power Control Devices, Inc. ("Power Control" or "the plaintiff"),

filed a complaint against the defendant; Orchid Technologies Engineering and Consulting, Inc. ("Orchid" or "the defendant") in connection with the parties' contract to design and build four prototypes of an amplifier to control a motor. The plaintiff contends that the prototypes did not meet contractual specifications and so alleges breach of contract and other claims in its complaint filed on April 25, 2011. (# 1) The defendant filed a motion to dismiss (# 5) on May 13, 2011 for failure to state a claim upon which relief can be granted on the grounds that plaintiff's claims were time-barred by the applicable statutes of limitations. Counts II, VI, and VII of the complaint were dismissed as time-barred. (# 20) Finding the applicable statute of limitations for the remaining claims to be six years, the claims for breach of contract (Counts I & V), breach of the implied covenant of good faith and fair dealing (Count III), and unjust enrichment (Count IV) were allowed to proceed based on the dates alleged in the complaint. (# 20)

On April 5, 2013, Orchid filed a motion for summary judgment (# 102) together with a memorandum of law (# 103), statement of material facts (# 104), and a declaration with exhibits (# 105) in support thereof. Power Control was thereafter ordered to reply, specifically addressing the question of why the statute of limitations did not start to run at the time the plaintiff was put on notice of the purported defect in the prototypes, i.e., not later than April 4, 2005. (Electronic Order entered 4/23/2013) The plaintiff, in response, submitted a memorandum of law in opposition to defendant's summary judgment motion (# 110) with exhibits (# 112) and statement of material facts (# 111), to which Orchid then filed a reply (# 113) with a second declaration (# 114) and a response to plaintiff's statement of facts (# 115).

The primary grounds for Orchid's motion for summary judgment is the contention that the applicable statute of limitations bars Power Control's remaining claims.

## II. Factual Background

The facts recited herein are culled from the joint pretrial memorandum (# 79), the defendant's statement of material facts (# 104) and exhibits (# 105), the plaintiff's statement of material facts in issue (# 111), and the defendant's response (# 115). The parties agree generally about what events occurred on which dates, but dispute the significance to ascribe to particular events.

On or about June 11, 2004, the parties entered into an agreement whereby Orchid was to design and build four prototypes of an amplifier to drive a motor. (# 79, pp. 1, 3; # 105, Ex. 1) Per the agreement, the defendant submitted prototypes to Power Control on four separate occasions, from January to March of 2005. (# 110, Ex. A; # 115, ¶ 4) Each time the plaintiff received a prototype from Orchid, Power Control tested the prototype "as soon as possible." (# 105, Ex. 2) Those testing dates were approximately January 18, January 21, January 29, February 8, and February 23, 2005. (# 105, Ex. 2) The conclusion reached by the plaintiff every time it conducted a test was that the design, as evidenced by each prototype, failed to meet all written specifications. (# 105, Ex. 2; # 111, ¶ 4)

The parties had multiple telephone conferences to discuss the discrepancies in testing methods and signals being tested. (# 115, ¶¶ 45–47) These conferences occurred on February 10, February 24, March 30, and April 14, 2005. (# 115, ¶ 45) Power Control asserts that during this time Orchid induced the plaintiff to continue making partial payments of the contract price under the promise that the design

problems would be corrected in the future. (# 111, ¶¶ 30–31) The defendant also provided results from its own testing to the plaintiff on March 4, 2005 and April 29, 2005. (# 105, Ex. 2) Power Control asserts that Orchid's testing further supported the conclusion that the plaintiff's specifications were not met. (# 105, Ex. 2)

On March 16, 2005, Orchid submitted to Power Control what the defendant represented to be the completed design. (# 79, p. 19; # 104, ¶ 4) This included a documentation package and four prototypes of what Orchid called the completed design. (# 104, ¶ 4) The defendant also enclosed a "formal release letter" with the final prototypes, outlining what was included in the package. (# 105, Ex. 5, Ex. 9) The formal release letter concluded in the following manner: "It has been my pleasure working with you and Richard. We look forward to working with you again in the future." (# 105, Ex. 9) Power Control acknowledges that Orchid considered this to be the end of the Phase 1 contract, and further admits that it received all the deliverables listed in the Phase 1 contract and formal release letter. (# 105, Ex. 4, Ex. 5) The plaintiff paid its final invoice on April 4, 2005. (# 79, p. 4)

Soon after March 16, 2005, Power Control tested the defendant's completed design package and found that the prototypes failed to meet the plaintiffs specifications. (# 105, Ex. 2; # 111, ¶ 4) On April 4, 2005, Michael Allmayer, Vice President of Power Control, alerted Orchid by email to the inconsistencies he had found in testing the final design. (# 105, Ex. 3) Mr. Allmayer stated, "We took measurements ... which I've attached. So far, we haven't been able to verify the correct gain structure.... Have you been able to externally verify that the unit is producing a current gain of 3 for every volt input command?"

(# 105, Ex. 3) The parties continued to discuss the testing issues. (# 115, ¶¶ 45–47)

At the plaintiff's request, Orchid conducted a test of the final prototypes. (# 115, ¶ 18) On April 29, 2005, the defendant produced its results in a document titled Control Discussion and Review ("report"), which Power Control contends revealed the defendant's breach of contract. (# 111, ¶¶ 32–35) The plaintiff refers to this date in the pretrial memorandum and its complaint as the date of breach. (# 79, p. 8; # 1, ¶¶ 20–23) Orchid disputes this characterization, asserting that the report was not a contractual performance, it reflected the same testing methodology that plaintiff had employed in its own testing, and was merely intended to clarify the issues and defend its design from Power Control's allegations. (# 113, p. 14; # 115, ¶¶ 19, 33)

The parties had further discussions in the months following the April 29th report in an attempt to remedy the issues, including four telephone conferences in May 2005 and a visit to Kansas in August 2005 by Mr. Nickelsberg on behalf of Orchid. (# 115, ¶¶ 36–40) During this time, no further invoices were issued after the plaintiff's final payment on April 4, 2005. (# 79, p. 4; # 103, p. 4)

The parties' contract does not include any provision stating that completion of the contract is contingent upon testing reports or acceptance of the design by Power Control. (# 105, Ex. 1; # 115, ¶ 29) The contract states that Phase 1 is complete upon "delivery to [plaintiff] of the prototype boards." (# 105, Ex. 1, ¶ 1.1.3) The defendant's "Control Discussion and Review" or report is not included in the list of required deliverables specified in the contract. (# 105, Ex. 1, ¶ 5.5)

The plaintiff filed this case against the defendant on April 25, 2011. Orchid seeks

the entry of judgment in its favor as a matter of law on the grounds that Power Control waited too long to bring its claims.

### III. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico,* 394 F.3d 40, 42 (1st Cir.2005) (internal quotations marks and citation omitted). When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(a).[1] The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top–Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir.2003) (citations omitted); *Borges ex rel. S.M.B.W. v. Serrano–Isern,* 605 F.3d 1, 5 (1st Cir. 2010).

Once the moving party alleges the absence of all meaningful factual disputes, the non-moving party must show that a genuine issue of material fact exists. This showing requires more than the frenzied brandishing of a cardboard sword. The non-moving party must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment.

*Certain Interested Underwriters at Lloyd's, London v. Stolberg,* 680 F.3d 61, 65 (1st Cir.2012)(internal citations and quotation marks omitted); *Fontáñez–Nuñez v. Janssen Ortho LLC,* 447 F.3d 50, 54–55 (1st Cir.2006).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart,* 449 F.3d 276, 280 (1st Cir.2006); *Guay v. Burack,* 677 F.3d 10, 13 (1st Cir.2012). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). " 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.' " *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986))(further internal quotation marks omitted).

### IV. Discussion

Assuming that Orchid did indeed breach the contract[2], the question is, when did the breach occur so as to start the statute of limitations clock? *See Foisy v. Royal Maccabees Life Ins. Co.,* 356 F.3d 141, 146

---

**1.** Rule 56 was amended effective December 1, 2010. The summary judgment standard is now set forth in Rule 56(a), but "[t]he standard for granting summary judgment remains unchanged." *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.,* 632 F.3d 31, 35 n. 4 (1st Cir. 2011).

**2.** Although the defendant disputes that it breached the contract, for the purposes of this opinion the merits of the contract-based claims are immaterial.

(1st Cir.2004); *Saenger Org., Inc. v. Nationwide Ins. Licensing Associates, Inc.,* 119 F.3d 55, 64 (1st Cir.1997); *Berkshire Mut. Ins. Co. v. Burbank,* 422 Mass. 659, 661, 664 N.E.2d 1188, 1188 (1996) ("The general rule is that a contract action accrues at the time the contract is breached."); *Nortek, Inc. v. Liberty Mut. Ins. Co.,* 65 Mass.App.Ct. 764, 769, 843 N.E.2d 706, 711, *rev. denied,* 447 Mass. 1103, 848 N.E.2d 1212 (2006) (Table). As discussed in the March 1, 2012 Order and Memorandum on Defendant's Motion to Dismiss (# 20), the applicable limitations period for this case is six years.[3] Since Power Control filed this case on April 25, 2011, the operative date for determining whether the plaintiffs claims are time-barred is April 25, 2005.[4]

If the plaintiff's cause of action accrued on April 29, 2005 upon receipt Orchid's report, Power Control's claim would be safely within the statutory period. However, if the breach occurred prior to that date, such as on March 16, 2005 with the final delivery of prototypes or April 4, 2005 with plaintiff's final payment and email to the defendant regarding discrepancies from its testing, the plaintiff's claims are time-barred. Power Control contends either that the contract was completed on April 29, 2005 upon receipt of the defendant's report and thus breached on that date, or, if the contract was breached prior

to that date, then the discovery rule should apply because the plaintiff was not on notice of the design inadequacy before receiving the defendant's report on April 29, 2005. (# 110) Orchid contends the plaintiffs cause of action accrued no later than April 4, 2005 with the Power Control's email and final payment, and that the discovery rule does not apply because Power Control was on notice of the alleged breach before the bar date. ( ## 103, 113)

In Massachusetts, the general rule is that a contract action accrues at the time the contract is breached. *Foisy,* 356 F.3d at 146; *Saenger Org.,* 119 F.3d at 64; *Micromuse, Inc. v. Micromuse, PLC,* 304 F.Supp.2d 202, 209 (D.Mass.2004). An exception to this general rule is the "discovery rule," which provides that

a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the factual basis for the cause of action. The standard is an objective one; in order to toll the statute of limitations pursuant to the discovery rule, the factual basis for the cause of action must have been inherently unknowable at the time of injury. The factual basis for a cause of action is inherently unknowable if it is incapable of detection by the wronged party through the exercise of reasonable diligence.

---

**3.** Mass. Gen. L. c. 260 § 2 ("Actions of contract … shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."); *see Micromuse, Inc. v. Micromuse, PLC,* 304 F.Supp.2d 202, 209 (D.Mass.2004) ("Massachusetts imposes a six-year statute of limitations on claims of breach of contract and breach of the implied duty of good faith and fair dealing. A six-year statute of limitations also applies to unjust enrichment claims based on the same underlying facts." (internal citations omitted)).

**4.** This Court has previously ruled that the contract in this case was a contract for services rather than a contract for sale of goods. *See Memorandum and Order on Defendants Motion to Dismiss* docketed as # 20 on March 1, 2012 at pp. 7–9. Thus, the six-year statute is applicable. The ruling was made on a motion to dismiss in which all inferences were drawn in favor of the plaintiff, and it is not known whether the defendant acquiesces in that ruling. However, the issue will be moot if the Court decides that the plaintiff failed to meet the six-year statute of limitations.

*Gonzalez v. U.S.,* 284 F.3d 281, 288–89 (1st Cir.2002) (internal quotation marks and citation omitted); *see also Foisy,* 356 F.3d at 146; *Tagliente v. Himmer,* 949 F.2d 1, 4 (1st Cir.1991); *Riley v. Presnell,* 409 Mass. 239, 244, 565 N.E.2d 780, 785 (1991).

### A. The "Discovery Rule" as Applied to Plaintiff's Contract Claims

■ In order for the statute of limitations to be tolled under the discovery rule, the basis for the action must have been "inherently unknowable" to the plaintiff at the time of the injury. *Latson v. Plaza Home Mortgage, Inc.,* 708 F.3d 324, 327 (1st Cir.2013); *Gonzalez,* 284 F.3d at 288–89. Again, "[t]he factual basis for a cause of action is inherently unknowable if it is incapable of detection by the wronged party through the exercise of reasonable diligence." *Geo. Knight & Co., Inc. v. Watson Wyatt & Co.,* 170 F.3d 210, 213 (1st Cir. 1999) (citation and internal quotation marks omitted); *RTR Technologies, Inc. v. Helming,* 707 F.3d 84, 90 (1st Cir.2013) ("In other words, the running of the statute of limitations is delayed while the facts, as distinguished from the legal theory for the cause of action, remain inherently unknowable to the injured party." (internal quotation marks and citations omitted)); *Gonzalez,* 284 F.3d at 288–89; *Tagliente,* 949 F.2d at 4.

■ However, in the instant case, as in *RTR Technologies,* "warning signs abounded." *RTR Technologies, Inc.,* 707 F.3d at 90. The factual basis for this action could not have been inherently unknowable because Power Control did exercise reasonable diligence and did discover the design inadequacies on its own. The inadequacies were detected within such a short period of time that even application of the discovery rule will not bring the plaintiff's claims within the statutory limitations period.

Power Control argues that its claims should be allowed to proceed under the discovery rule because Orchid's breach was "inherently unknowable" to the plaintiff prior to April 29, 2005 when it received the defendant's report, allegedly confirming the final design did not meet the contract specifications. (# 110, p. 14) Orchid responds that the claims are still time-barred under the discovery rule because the plaintiff was on notice of the alleged defects well before the bar date. (# 103, p. 10)

The plaintiff cannot convincingly argue that the design discrepancies were inherently unknowable when its own employees, doing plaintiff's own testing, were the ones to discover the discrepancies. (# 105, Ex. 2) In fact, Power Control discovered the discrepancies close on the heels of receiving the prototypes, as evidenced by the communications between the parties following the deliveries—in particular, the April 4 email from Mike Allmayer of Power Control to the defendant inquiring about the issues found in testing. (# 105, Ex. 3; # 115, ¶ 45)

Although Power Control contends that Orchid possessed unique engineering expertise such that the plaintiff could not determine a breach on its own (# 110, p. 14), this is not a case involving unequal positions of knowledge. *See Melrose Hous. Auth. v. New Hampshire Ins. Co.,* 402 Mass. 27, 32, 520 N.E.2d 493, 497 (1988). While the defendant may have possessed superior knowledge to execute the design, the individuals who actually tested the prototypes on plaintiff's behalf were Mike Allmayer, Vice President of Power Control, and Mike Lawson, Lead Production Engineer of Power Control.[5]

---

**5.** Indeed, Mike Allmayer and Mike Lawson were disclosed as plaintiff's expert witnesses

(# 105, Ex. 2;  # 114, Ex. 15) Unlike cases where the discovery rule applies because a plaintiff must hire outside experts to discover a problem, here Power Control's own Vice President was the one to note inconsistencies when the prototypes were received. *See Cambridge Plating Co., Inc. v. Napco, Inc.*, 991 F.2d 21, 29 (1st Cir. 1993); *Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc.*, 396 Mass. 818, 825, 489 N.E.2d 172, 177 (1986) (tolling statute of limitations when the plaintiff "... could not be expected to recognize that the design would fail to meet the promised performance standards without hiring other professionals to review the defendants' work."); (# 105, Ex. 2).

■ Unlike cases in which the discovery rule could be applied and the statute of limitations tolled because the plaintiff had inferior knowledge, Power Control was a sophisticated party deeply involved in the highly technical project. *See Cambridge Plating Co.*, 991 F.2d at 29; *Anthony's Pier Four, Inc.*, 396 Mass. at 825, 489 N.E.2d at 176–77. In the present case, the plaintiff controlled and provided detailed contract specifications, including directing multiple revisions before accepting version 1.5 of the contract. (# 79, pp. 2–3) Power Control also sent a motor and a static load device to Orchid to test the prototypes in the manner the plaintiff specified. (# 114, Ex. 15, p. 3) In its expert disclosure, Power Control states: "In the many telephone conferences that occurred between the parties, representatives of plaintiff made [the] output requirements crystal clear, and the representatives of defendant stated that they understood these requirements." (# 114, Ex. 15, p. 3) Indeed, the contract itself notes that it was developed "in the spirit of cooperation by two responsible parties." (# 105, Ex. 1, p. 4) When the parties stand in relatively equal positions of knowledge in a commercial transaction, as was the case here, it would be inappropriate to apply the discovery rule. *See Melrose Hous. Auth.*, 402 Mass. at 32–34, 520 N.E.2d at 497–98.

The relevant facts were not "inherently unknowable" to the plaintiff prior to April 29, 2005. *See RTR Technologies, Inc.*, 707 F.3d at 90; *Gonzalez*, 284 F.3d at 288–89; *Saenger Org.*, 119 F.3d at 66. Power Control knew the prototypes were inconsistent with its specifications, and, in fact, the plaintiff knew this *by its own testing*. (# 105, Ex. 3;  # 114, Ex. 15) Power Control knew the identity of the defendant and the nature of the issue-namely, that the prototypes were not performing according to the plaintiff's standards. (# 105, Ex. 3; # 114, Ex. 15) The plaintiff was not in a state of "blameless ignorance" as would toll the onset of the limitations period. *See Hanson Hous. Auth. v. Dryvit Sys., Inc.*, 29 Mass.App.Ct. 440, 447, 560 N.E.2d 1290, 1295 (1990), *rev. denied*, 409 Mass. 1101, 565 N.E.2d 792 (1991) (Table).

Moreover, it should be noted that even if the discovery rule were to be applied in this case, the statutory clock would have started ticking as of April 4, 2005, when Power Control demonstrated it had discovered by its own testing that the prototypes did not meet the contractual specifications. (*See* # 105, Ex. 3; # 114, Ex. 15) Thus, applying the discovery rule would not help the plaintiff avoid the statute of limitations.

**B. *The Plaintiff was on Notice of its Claims Prior to April 25, 2005***

■ The statute of limitations clock begins running upon initial notice of a prob-

to testify about the technical deficiencies in the amplifier design, as well as the "many ways in which Mr. Allmayer, for plaintiff, brought these technical deficiencies to the attention of defendant...." (# 114, Ex. 15).

444

lem, not upon confirmation of breach by the breaching party, or upon notice of every fact which must eventually be proved in support of the claim. *Cambridge Plating Co., Inc.*, 991 F.2d at 27–28 ("[T]he statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused [its] injury.... The [discovery] rule does not suspend the running of the limitations period pending confirmation of the plaintiff's injury or its cause ...." (internal citations omitted)); *White v. Peabody Const. Co., Inc.*, 386 Mass. 121, 130, 434 N.E.2d 1015, 1020 (1982) (statute runs from notice of an injury, not from when the cause of the injury is determined).

■ Power Control knew that Orchid called its March 16, 2005 delivery the "completed design" and considered that delivery to be the end of the Phase 1 contract. (# 105, Ex. 4, Ex. 5) The plaintiff itself tested the final prototype "as soon as possible" and found that it failed to meet its specifications. (# 105, Ex. 2; # 111, ¶ 4) Power Control soon contacted the defendant via email (April 4th) and teleconference (April 14th) to discuss the discrepancies. (# 105, Ex. 3, Ex. 14; # 115, ¶ 45) On the same day that Power Control emailed Orchid to notify it about the testing discrepancies, the plaintiff paid the defendant's final invoice. (# 79, p. 4) By this point, Power Control was certainly on notice that a breach had possibly occurred. *See Cambridge Plating Co., Inc.*, 991 F.2d at 27; *White*, 386 Mass. at 130, 434 N.E.2d at 1020–21; *Hanson Hous. Auth.*, 29 Mass.App.Ct. at 446, 560 N.E.2d at 1294. At least as of the April 14th teleconference between the parties, Power Control knew from its own testing that the final prototype did not meet specifications and so reasonably should have known a breach had, or likely had, occurred. *See Donahue*

*v. United States*, 634 F.3d 615, 625–28 (1st Cir.2011), *cert. denied by Macarelli v. U.S.*, — U.S. ——, 132 S.Ct. 2375, 182 L.Ed.2d 1051 (2012); *Gonzalez*, 284 F.3d at 288–89; (# 105, Ex. 2, Ex. 14; # 111, ¶ 4; # 114, Ex. 15) At that point the plaintiff had sufficient factual information to start the running of the limitations period. *See Donahue*, 634 F.3d at 627.

In addition, Orchid's April 29th report does not bear on the accrual date analysis. Nowhere does the contract state that completion was contingent upon receipt of the defendant's Control Discussion and Review. (# 105, Ex. 1; # 115 ¶ 29) Since Power Control requested the report only after its own testing, and the report allegedly showed that the prototypes were not to the plaintiff's specifications, the report simply confirmed what Power Control already suspected, i.e., that the prototypes did not meet plaintiffs standards. *See Hanson Hous. Auth.*, 29 Mass.App.Ct. at 446, 560 N.E.2d at 1294; (# 111, ¶¶ 32–35). Given that the plaintiff only needed notice of its potential cause of action and not confirmation of breach from the defendant, it certainly had such notice prior to receiving the April 29th report. *See Cambridge Plating Co.*, 991 F.2d at 27; *White*, 386 Mass. at 130, 434 N.E.2d at 1020–21; *Mansfield v. GAF Corp.*, 5 Mass.App.Ct. 551, 555, 364 N.E.2d 1292, 1295 (1977). Thus Orchid's report, which was not included as a deliverable in the contract and simply confirmed Power Control's suspicions arising from the testing failure, is immaterial in determining the date of breach and accrual of the action. (# 105, Ex. 1, ¶ 5.5)

C. *Is the Limitations Period Tolled Because of Ongoing Discussions Between the Parties or an Allegedly Ambiguous Contract Provision?*

■ The plaintiff's remaining arguments are insufficient to toll the accrual of

its claims. First, Power Control contends that ongoing discussions between the parties about testing issues after the March 16th delivery meant that the contract was not complete, and therefore not breached, until the April 29 report. (# 110, p. 9) Orchid responds that the contract was complete on March 16th, so it was either breached or fulfilled on that date, and post-breach discussions do not toll the statute of limitations. (# 113, pp. 6, 11–12)

■■■■■ Ongoing discussions with the defendant in an attempt to remedy the issues are insufficient to toll the statute of limitations. *See Burns v. Massachusetts Inst. of Tech.,* 394 F.2d 416, 419 (1st Cir. 1968) ("In the ordinary case a plaintiffs discussions with a defendant do not postpone the accrual of the cause of action until he is satisfied that the defendant is going to do nothing for him."); *Daley v. Twin Disc, Inc.,* 440 F.Supp.2d 48, 52 (D.Mass.2006) ("defendants' repeated efforts to repair did not toll the running of the statute of limitations"). As described above, a breach of contract claim ordinarily accrues at the time of breach, or if the breach was "inherently unknowable," the claim accrues when the injured party knew or reasonably should have known of the breach. *Latson,* 708 F.3d at 327; *Foisy,* 356 F.3d at 146; *Tagliente,* 949 F.2d at 4. There is no additional exception to the statute of limitations for ongoing discussions between the parties, particularly when the plaintiff had a generous window of six years in which to file suit. (*See* # 20) Completion of the parties' contract was not contingent on Power Control's satisfaction or acceptance, so ongoing party communications are not relevant to the question of when the contract was complete and breached. *See Aetna Casualty & Surety Co. v. Bell,* 390 F.2d 612, 613–14 (1st Cir.1968) (The rule "cannot be ... that the cause of action accrues only when

the settlement talks break down. This would make the policy limitation close to meaningless."); (# 105, Ex. 1; # 115 ¶ 29).

■■■■■ Second, the plaintiff's allegations of ambiguous contract provisions are insufficient to toll the statute of limitations. Power Control alleges that paragraphs 1.1.3 and 5.6 of the contract are ambiguous and offers alternative meanings for these provisions. (# 110 pp. 10–12; # 111, ¶¶ 2–5; # 112, Ex. 1) "Interpretation of a contract is ordinarily a question of law for the court.... Absent an ambiguity, the court interprets a contract according to its plain terms, in a manner that gives reasonable effect to each of its provisions." *Weiss v. DHL Exp., Inc.,* 718 F.3d 39, 44–45 (1st Cir.2013) (internal citations and quotation marks omitted).

> A court interpreting a contract must first assess whether the contract is ambiguous.... Ambiguity is not created merely because the litigants disagree about the meaning of a contract. Rather, a contract is only ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken.

*Farmers Ins. Exch. v. RNK, Inc.,* 632 F.3d 777, 783 (1st Cir.2011) (internal quotations marks and citation omitted); *see also Weiss,* 718 F.3d at 45 ("A contract is not ambiguous simply because litigants disagree about its proper interpretation. Ambiguity arises only if the language is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." (internal citations and quotation marks omitted)).

Paragraph 1.1.3 of the contract at hand is not ambiguous. (# 105, Ex. 1) The plain terms of paragraph 1.1.3 state:

As part of the Phase 1 Hardware Development Project, Orchid shall supply four (4) BLDC1 Prototype Circuit Boards to Power Control Devices, Inc. Working with its third-party suppliers, Orchid shall have four (4) boards assembled, debugged and delivered to Power Control Devices, Inc. Per the attached schedule. The BLDC1 Phase 1 Development Program completes with delivery to PCD of the prototype boards. # 105, Ex. 1.

Power Control contends that this paragraph was "not intended to refer to the contract being completed when Orchid simply submitted prototypes, regardless of whether those prototypes met written specifications," but instead was "intended to refer to the contract being completed when Orchid submitted prototypes that met the written specifications." (# 112, Ex. 1) However, nowhere in the contract does it state or imply that completion of the contract is contingent upon approval, testing reports, or satisfaction of the plaintiff. *See* # 105, Ex. 1; # 115 ¶ 29. Instead, according to the terms of paragraph 1.1.3, the contract was complete upon delivery of the four prototypes. (# 105, Ex. 1) The contract may have been breached if the delivered prototypes did not meet the written specifications, but under paragraph 1.1.3, it was complete. (# 105, Ex. 1) The language of paragraph 1.1.3 simply cannot "support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *See Farmers Ins. Exch.*, 632 F.3d at 783. The plaintiff's argument that this paragraph of the contract is ambiguous is insufficient to create a genuine issue of material fact to survive the summary judgment motion.

In addition, Power Control's contention that paragraph 5.6 of the contract with respect to testing is ambiguous does not affect the limitations analysis. Power Control argues that paragraph 5.6 of the contract which designates the plaintiff to "provide all testing" is ambiguous and so the statute of limitations should be tolled. (# 110, pp. 10–12) Whether the parties expected the plaintiff to conduct independent testing or merely pay for testing by the defendant is irrelevant because Power Control actually did its own testing. (# 105, Ex. 2; # 111, ¶ 4) The plaintiff cannot hide behind an allegedly ambiguous contract clause to feign ignorance of the design discrepancies. *See Hanson Hous. Auth.*, 29 Mass.App.Ct. at 447, 560 N.E.2d at 1294–95. Whether or not the clause is ambiguous, the statute is not tolled because Power Control was aware of sufficient facts to alert a reasonable person to a potential claim no later than April 14, 2005. *See Edwards v. John Hancock Mut. Life Ins. Co.*, 973 F.2d 1027, 1029–30 (1st Cir. 1992).

██ In summary, the alleged breach by Orchid was either known or readily "knowable" in advance of April 25, 2005. *See Catrone v. Thoroughbred Racing Associations of N. Am., Inc.*, 929 F.2d 881, 887 (1st Cir.1991). "Under Massachusetts law, the plaintiff bears the burden of presenting facts sufficient to take the case outside the statute of limitations." *Saenger Org.*, 119 F.3d at 65–66 (internal quotation marks, alteration and citations omitted). Power Control has failed to meet that burden.

██ "In most instances, the question of when a plaintiff knew or should have known of its cause of action is one of fact that will be decided by the trier of fact." *Taygeta Corp. v. Varian Associates, Inc.*, 436 Mass. 217, 229, 763 N.E.2d 1053, 1063 (2002) (citations omitted). However, judgment is appropriate when there is no doubt that an asserted claim is time-barred. *See Gorelik v. Costin*, 605 F.3d 118, 121 (1st Cir.2010); *Warren Freeden-*

*feld Associates, Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir.2008); *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir.1998); *Saenger Org.*, 119 F.3d at 65–66. Here, there is no trial worthy issue on the statute of limitations question because there is not enough evidence for a jury to return a verdict for the nonmoving party. *See Saenger Org., Inc.*, 119 F.3d at 65–66. No reasonable juror could find that Power Control did not know the facts underlying its cause of action for breach of contract, or that such facts were unknowable, prior to April 25, 2005. *See id.*

### V. Conclusion and Order

For all of the reasons stated, it is ORDERED that the Defendant's Motion for Summary Judgment (# 102) be, and the same hereby is, ALLOWED. Judgment shall enter for the defendant.